## MATTHEWS v. BANK OF ALLENDALE.

1. *Latimer et al. v. R. & D. R. R. Co., 39 S. C., 40, and Wenzell v. Brewing Co., 48 S. C., 80, distinguished from this.*

2. EQUITY— CORPORATIONS— STOCKHOLDERS— BANKS— RECEIVER.—One stockholder of a bank may maintain an action in equity for receiver, to require officers to account for assets entrusted to them, and to wind up the affairs of the corporation, and to pay out its assets to stockholders, where the stockholders at a regular meeting so authorized the officers, who accepted the trust, collected and paid to stockholders part of the stock, and then commenced a banking business, lending money to themselves and others, and losing assets by bad management.

3 PLEADINGS—COMPLAINT.—One good cause of action being stated, admixture of others is not ground for dismissal of complaint.

4 CORPORATIONS—STOCKHOLDER.—Does the act of 1898 (22 St., 774,) permit a stockholder to bring an action in equity to wind up a corporation, after resolution by stockholders authorizing officers to do so, and breach of duty on part of officers?

5. PLEADINGS—RECEIVER—ACCOUNTING—BANK.—COMPLAINT asking for receiver and accounting by officers of bank does not state two causes of action.

Before GARY, J., Barnwell, August, 1900.    Reversed.

Action by Myrtis V. Matthews against Bank of Allendale, C. M. Hiers and W. V. Gill.   From judgment dismissing complaint, plaintiff appeals.

*Messrs. Legare & Holman,* for appellant, cite: *Complaint does not improperly unite two causes of action:* 53 S. C., 533. *Does the complaint state facts sufficient to constitute a cause of action?* 18 S. C., 469; 56 S. C., 241; 39 S. C., 44; 48 S. C., 80; 53 S. C., 414; 22 Stat., 774.

*Messrs. R. C. Holman* and *B. T. Rice,* also for appellant. No citations.

*Messrs. J. O. Patterson* and *W. T. Gary,* for Bank; *Messrs. Townsend & O'Bannon,* for Heirs, and *Mr. Robert Aldrich,* for Gill, contra. *Mr. W. T. Gary* cites: *Complaint does not state sufficient effort to obtain relief from corporation:* 39 S. C., 44; 2 Hare, 461; 104 U. S., 450; L. R., 1, Ch. D., 21.

April 3, 1901.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    A demurrer to the complaint was sustained by the Circuit Judge.    From his judgment an appeal was taken.    Thus it will be necessary to set out the complaint, the grounds of demurrer, the judgment appealed from and the grounds of appeal.    The complaint was as follows:

"The plaintiff above named, complaining of the defendants, by this her amended complaint, on behalf of herself and all others of the stockholders of the defendant bank, who will come into this action and share the expenses thereof, alleges:

"1. That the Bank of Allendale is now, and was at the time hereinafter mentioned, a corporation duly organized and chartered under the laws of said State, and as such was authorized to do a general banking business; that said bank has its principal office or place of business at Allendale, in the county aforesaid.

"2. That the said Bank of Allendale was organized according to law, and received its charter in the year A. D. 1890, and the said bank organized with a capital of $50,000, divided into 500 shares of the par value of $100 per share.

"3. That the plaintiff purchased ten shares of the capital stock of said bank soon after its organization, and is now the owner and holder of the ten shares of the capital stock of said bank, as represented by certificate No. 84.

"4. That the defendant, C. M. Hiers, was elected president of said bank at the first meeting of the directors after its organization, and has been annually elected such president since that time, and is now the president of said bank.

"5. That the defendants, W. V. Gill, F. M. Young, T. H. Johnson and C. M. Hiers, were elected directors of said bank at the time of its organization, and have been continuously elected since that time, and are now the directors of said bank.

"6. That the Bank of Allendale commenced business under favorable auspices, and did a general banking business after its organization. That the principal business was the discounting of notes of farmers in the county of Barnwell, to whom money was lent at high and usurious rates of interest, ranging from ten to twelve per cent.

"7. That C. P. Allen was elected cashier of said bank at the time of its organization, and held such office until the date of his death in the year 1897, and that C. B. Farmer was elected his successor, and is now the cashier of said bank.

"8. That in the year A. D. 1896, the stockholders of said bank, in meeting assembled, resolved to wind up its affairs and return the capital stock to its shareholders, together with all profits, earnings and accumulations thereof, and that the officers of said bank were charged with the duty of collecting the assets and returning the same to the shareholders.

"9. That in accordance with said resolution, sixty per cent. of the capital stock of said bank has been returned to the stockholders, the plaintiff receiving her instalments so returned as follows: $200 on May 22, 1896; $200 on     day of     189 , and $200 on November 18, 1897; making a total of sixty per cent. of the capital stock of said bank, returned to the plaintiff on her said ten shares of stock.

"10. That the plaintiff has received no part or portion of the forty per cent. due on her stock, and is informed and believes that a large number of the stockholders are similarly situated. That the plaintiff has from time to time made

earnest efforts to have said bank return the balance of the said stock, consisting of forty per cent. thereof as aforesaid, but all her efforts have been unavailing and of no effect.

"11. That the plaintiff is informed and believes, and upon such information alleges, that the balance of the capital stock of said bank, amounting to $20,000, is unreasonably and without excuse withheld from the plaintiff and the other stockholders in a like position.

"12. That the plaintiff further alleges, upon information and belief, that 'C. M. Hiers, the president of said bank, and W. V. Gill, one of its directors, have controlled and directed the affairs or policy of said bank almost exclusively since its organization, and especially since said bank has gone into voluntary liquidation as aforesaid.

"13. That on the 28th of February, 1896, about the time the said bank resolved to go into liquidation, in a statement made by said bank through its cashier, C. P. Allen, it was reported that said bank had on hand $3,000 of surplus, and $1,524.19 undivided profits, and this plaintiff alleges that no part thereof has ever been paid over to her as a stockholder or otherwise; and that notwithstanding an earnest effort has been made on her part to have a satisfactory adjustment and settlement of the affairs of said bank, she has been unable to induce said bank, or its officers and agents having its affairs under control, to make any settlement with her in regard to the matters above mentioned.

"14. That the plaintiff has applied repeatedly, for the last two years, to said bank and its officers, for information concerning its affairs, and for a distribution of the balance of the capital stock thereof, and has endeavored to ascertain when said bank would finally wind up and pay over the balance of the forty per cent. of stock and the earnings thereon as aforesaid, but she has been unable to get any satisfaction concerning the same.

"15. That the above named plaintiff is informed and believes, and upon such information alleges, that the said C. M. Hiers and W. V. Gill, in violation of the instruction of

the stockholders, have been conducting a banking business with the capital of said bank, have been receiving deposits, making loans and discounts, and doing an exchange business through said bank in the same manner as was done before the resolution of the stockholders, to wind up the affairs of said bank, was passed.

"16. That the affairs of said bank have been exclusively managed, controlled and directed by C. M. Hiers and W. V. Gill, two of the directors, who are large shareholders in the capital stock of said bank, and that they have not used due and proper diligence in carrying out the instructions of the stockholders as above set forth.

"17. That the said bank and its officers and agents having its affairs under their said custody and control, have been grossly negligent and derelict in their duty towards the stockholders of said bank and the management of its affairs, and in failing to return the balance of the capital stock to such shareholders. That more than three years have elapsed since the resolution of the stockholders to wind up the affairs of said bank, and return the capital stock to its owners, together with all accumulations and profits; and notwithstanding the defendants have had ample opportunity to wind up the affairs of said bank and return the capital stock to its shareholders, they have failed to do so.

"18. That the plaintiff made frequent attempts from time to time, as before stated, to secure a statement from the bank as to the condition of said bank, and as to the time when the capital stock would be returned and a final settlement made, and the plaintiff but recently, within the last five months, secured a statement to the effect that more than $11,000 of the remaining $20,000 of the capital stock has been carried to the profit and loss account.

"19. That at the time the stockholders resolved to liquidate or wind up the affairs of said bank, and return the capital stock to the shareholders, the officers of said bank made a statement to the effect that the bank was in a sound financial condition, and that besides the assets of the bank, it was re-

ported that the bank had a large surplus on hand, as above set forth, and that the recent report submitted to the effect, that $11,000 of the assets of said bank had been carried to the profit and loss account, is utterly at variance with and contradictory of the previous report. That on account of the conduct and attitude of the officers managing the affairs of said bank as aforesaid, it is imperative, in order to preserve the rights of the stockholders, that the affairs of said bank should be wound up under the direction of this Court.

"20. That more than $17,000 of the capital stock of said bank has been lost or dissipated through the gross carelessness and bad management of the officers and the directors of said bank. That the plaintiff has made earnest and persistent efforts to obtain information from said bank and its officers, as to the condition of said bank, and in what manner the assets thereof have been lost or applied, and that such information was refused. That it would be useless and unavailing to make further application to the Bank of Allendale as a corporation or to the officers and directors of same, for a settlement of the affairs thereof, for the reason that the officers and directors of said bank are the wrong-doers, and that C. M. Hiers and W. V. Gill completely direct and control the affairs of the said bank.

"21. That said bank should now have on hand $24,500 for distribution among its stockholders, consisting of $20,000 balance of capital stock, and $5,500 surplus and undivided profits; but the plaintiff alleges, on the contrary, that said bank has no cash whatever on hand, and that the assets of said bank are not worth more than $6,000; that the said officers and directors above named have always been careless and negligent in the management of the affairs of the said bank. That the cashier of same, G. P. Allen, was never required to give bond in any sum whatever; that said bank for years before the resolution of the stockholders to wind up its affairs failed and refused to publish quarterly statements, as required by law, and that the said bank loaned money to its officers and directors in violation of law; and

the plaintiff further alleges, that the only way in which a fair, just and equitable settlement of the affairs of said bank can be accomplished is through the medium of the Courts.

"22. At times hereinbefore mentioned, W. P. Wilcox and John K. Garnett were directors of the said defendant bank, and also stockholders therein, and are necessary parties to this action.

"Wherefore, the plaintiff prays judgment: 1. That the affairs of said bank be wound up under the order and direction of this Court. 2. That a receiver be appointed to take charge of the effects of said bank for the purpose of winding up the same. 3. That the said officers and directors of said bank be required to account for their actions and doings in the management of the affars of said bank, and for such other and further relief as to the Court may seem meet and proper."

The following are the grounds of demurrer:

"1. That the complaint does not state facts sufficient to constitute a cause of action.

"2. That there is a defect of parties plaintiff, for the reason that the plaintiff, as a stockholder of the defendant corporation, seeks to wind up the affairs of the said defendant corporation under the directons of this Court, and the same cannot be done without the presence of the other stockholders of the said corporation who are equally interested with plaintiff in the said corporation, and should be parties plaintiffs in this cause.

"That there is a defect of parties defendant, for the reason that the plaintiff, as a stockholder of the defendant corporation, seeks to wind up the affairs of the said defendant corporation under the directions of this Court, and the same cannot be done without the presence of the other stockholders of the said corporation who are equally interested with plaintiff in the corporation, and should be parties defendant in this cause.

"That there is a defect of parties defendant, because W. P. Wilcox and J. K. Garnett were at the time defendant cor-

poration went into liquidation and was dissolved, and still are, directors of said corporation, and are necessary parties defendant to this action.

"That several causes of action have been improperly united."

The following is so much of the decree as is necessary to reproduce:

"Does the complaint state facts sufficient to constitute a cause of action? The principle of law applicable to this inquiry is stated by our own Supreme Court, in the cause of *Latimer* v. *Richmond and Danville R. R. Co.*, 39 S. C., 44. There the directors are charged with the mismanagement or misappropriation of the corporate property; 'the action to restrain or redress such wrong must be instituted by the corporation, because the conduct complained of is a breach of the trust relation existing between the directors and the corporation, but is no breach of any trust relation to the stockholders, as no such relation in regard to the corporate property exists between the directors and the stockholders, accordingly the general rule is, that in such case, an individual stockholder, or one or more of them, cannot maintain an action for the redress of such wrong.' The allegations of the complaint in this case are not sufficient to form an exception to the general rule above stated. The complaint does not even charge that the directors of said bank have been guilty of any 'act of oppression, illegality, *ultra vires* or fraud; or that the board of directors, or a majority of them, are acting in their own interest in a manner destructive of the corporation itself or of the rights of the other stockholders;' or that 'the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a Court of Equity.' Further, 'before a stockholder can maintain a suit in these exceptional cases, he must show that he has endeavored to get redress of his grievance within the corporation, or he must show facts which would justify a

Court in concluding that an effort for redress within the corporation would be unavailing' (*Wenzell* v. *Palmetto Brewing Co.,* 48 S. C Rep., 80). Considering the complaint in the light of the principles above stated, it fails to show the necessary grounds for equitable interference, and, therefore, fails to state facts sufficient to constitute a cause of action. The first ground of demurrer must, therefore, be sustained.

"The second and third grounds of demurrer, to the effect that there is a defect of parties plaintiff and defendant, because the other stockholders of said corporation are necessary parties either as plaintiff or defendant, would be material only in the event the first ground had not been sustained; having, however, sustained the first ground of demurrer, it is considered unnecessary to pass upon the second and third grounds.

"The fourth ground of demurrer was abandoned and withdrawn at the hearing.

"The fifth ground of demurrer, 'that several causes of action have been improperly united,' makes it necessary to consider another view of the case. At the hearing it was argued on behalf of plaintiff, that authority to bring this action is confined by the act providing for the winding up of the business of corporations whose charters have been forfeited—acts 1898, page 774. The title of the act is a specific declaration of its purpose. Its provisions apply to all corporations, whether they expire by their own limitations or be annulled by General Assembly or otherwise dissolved, and to none others. 'The dissolution of a corporation is that condition of law and fact which ends the capacity of the body corporate to act as such, and necessitates a liquidation and extinguishment of all the legal relations subsisting in respect of the corporate enterprise.' Taylor on Corporations, 309. 'The dissolution of a corporation may happen in the following ways: 1. By expiration of the time limited in the charter. 2. Upon the happening of a contingency prescribed by the charter. 3. By the surrender of the franchise to the State.

4. By act of the legislature. 5. By failure of an integral part of the corporation. 6. By forfeiture of the franchise in a proper judicial proceeding.' A private corporation may dissolve itself and terminate its corporate existence by a surrender of its franchise to the State. To make the surrender complete, however, it must be accepted by the State. But the complaint does not allege that the said corporation has been dissolved, but on the contrary, in paragraph 8 of the complaint, it is alleged: 'That in the year A. D. 1896, the stockholders of said bank, in meeting assembled, resolved to wind up its affairs and return the capital stock to its shareholders, together with all profits, earnings and accumulations thereof, and that the officers of said bank were charged with the duty of collecting the assets, and returning the same to the shareholders,' and the complaint also alleges that said officers undertook the trust and have already returned sixty per cent. of the capital stock, and have other assets on hand which they are administering. The dissolution of said corporation has not been effected, and the provisions of the act of 1898, above referred to, are not applicable, and do not confer upon the plaintiff any right to bring the action. But even conceding that a stockholder of the Bank of Allendale is authorized to proceed under said act, the provisions of the said act limit the action which may be brought by the stockholders of a dissolved corporation. Sec. 4 of said act provides: 'Any Circuit Judge of this State, acting under the laws of this State as to receivers, on application of any creditor or stockholder at any time may either continue the directors as trustees, as aforesaid, or appoint one or more persons to be receivers of such corporation, to take charge of the estate and effects thereof, &c.' From this section it appears that the receiver thus appointed, and not the stockholder, is clothed 'with the power to prosecute and defend, in the name of the corporation or otherwise, all suits necessary or proper for the purpose aforesaid,' &c. The plaintiff in this action seeks not only the appointment of a receiver under said act, but has also proceeded against the directors of said bank,

'who were charged with the duty of collecting the assets and returning the same to the shareholders,' by the stockholders of said bank, and demands an accounting of them, and also of others who had been directors and made parties defendant. In that view several causes of action have been improperly united. It appears that the plaintiff's attorneys gave notice of a motion in the above stated case, dated May 13th, 1900, for the appointment of a receiver of said bank, which motion, by agreement of cousel, was argued and heard along with the demurrer. The view which I have taken of the demurrer, controls the case, and renders it unnecessary to further consider said motion except to state that the same is refused.

"It is, therefore, ordered, that the complaint be dismissed, and that the order of injunction restraining the stockholders of said bank from meeting and winding up the affairs of said bank is hereby dissolved."

The following are the exceptions:

"(1) Because his Honor erred in sustaining the demurrer to the complaint herein on the grounds that the same did not state facts sufficient to constitute a cause of action, and in rendering judgment dismissing said complaint. (a) For that the complaint alleges that the stockholders of said bank had resolved to wind up the affairs of same and return the capital to the shareholders, and had charged the directors and officers thereof with the duty of collecting the assets and paying over the same, and that the defendants had failed and refused to carry out the trust thus imposed. (b) In that the complaint alleges that the officers and directors of said bank continue to operate said bank for their own personal advantage, after the resolution instructing the officers thereof to wind up its affairs and return the capital stock to the shareholders. (c) In that the complaint alleges that the officers and directors of said defendant bank had failed and refused to carry out the instructions of the shareholders in winding up the affairs of said bank, and was thereby guilty of a dereliction of duty. (d) In that the complaint

13—60

alleges that the balance of the capital stock, amounting to $20,000, is unreasonably and without excuse withheld from the plaintiff and the other stockholders in like position with plaintiff. (e) In that the complaint alleges that W. V. Gill and C. M. Hiers controlled and managed the affairs of said bank, and were guilty of a dereliction of duty and a breach of trust in failing to carry out the instructions of the shareholders, and that they withheld the assets and continued to operate the bank contrary to law, and instructions of the shareholders. (f) In that the complaint alleges that a reasonable time has elapsed, and notwithstanding the defendants had failed to carry out the duty imposed upon them by the stockholders, and that the defendants had been guilty of gross negligence in such regard. (g) In that the complaint alleges that the plaintiff made frequent attempts to have defendants carry out the instructions and resolutions of the stockholders, and that they refused information as to the affairs of the bank or to comply with her request. (h) In that the complaint alleges that the defendants, Hiers and Gill, were large stockholders and controlled corporate action in the business management of said bank. (i) In that the complaint alleges that a large portion of the assets of the defendant bank had been lost and dissipated through the gross negligence and carelessness of the directors, Gill and Hiers. (j) In that the complaint alleges that the bank, through Gill and Hiers, neglected to require the cashier to give bond, that they lent money to the officers of the bank, and in various ways acted in violation of law, in the management of said bank.

"(2) Because his Honor erred in holding that the allegations of the complaint herein did not make an exception to the general rule regulating the bringing of an action by a stockholder against a corporation to wind up its affairs, and in holding that the complaint did not state facts sufficient to warrant equitable interference; whereas, his Honor should have held that the defendant bank was not a going concern, and that the defendant officers were trustees directed to wind

up the bank, and not to operate the same as a business corporation.

"(3) Because his Honor erred in holding that several causes of action were improperly united in the complaint, in that the plaintiff sought to wind up the affairs of the bank, and also to hold the officers in charge thereof personally liable for a dereliction of duty; whereas, his Honor should have held that the plaintiff could maintain this action in its present shape and form of allegation, to wind up the affairs of the bank, and to hold the officers in charge thereof to an accounting for a breach of trust or a dereliction of duty.

"(4) Because his Honor erred in construing the complaint as an attempt on the part of the plaintiff to wind up the affairs of a corporation which had forfeited its charter, there being no allegation looking to this end.

"(5) Because his Honor erred in refusing to appoint a receiver, in that the allegations of the complaint were to be taken as true, on said motion; and a receiver was necessary to investigate and wind up the affairs of the bank, in the place and stead of officers who had failed and refused to carry out the instructions of the stockholders thereof.

"(6) Because his Honor erred in sustaining the demurrer to the complaint, on the ground that the same did not state facts sufficient to constitute a cause of action; whereas, the complaint in plain and direct terms charged the defendant with a dereliction of duty, breach of trust, and a failure to carry out the plain and explicit directions of the stockholders requiring them to wind up the affairs of said bank, and that they had failed to do so, notwithstanding more than three years had elapsed.

"(7) Because his Honor should have held that this was an action brought on behalf of all the stockholders, and could, therefore, be maintained in its present shape to wind up the bank, and require the officers of the bank to account for a dereliction and breach of duty."

The demurrer admits as true all the material allegations of fact as stated in the complaint, and as all the questions

here raised are based upon alleged failures in the allegations of fact in the complaint, I must be understood as reasoning not upon the facts of the complaint being actual verities, but only as verities for the purposes of this discussion. I will not name exceptions, but I hope it will be found that they are all covered by the succeeding discussion of the merits of the appeal, as I grasp them. I am inclined to the opinion that the complaint in the case at bar does state facts sufficient to constitute a cause of action, and in reaching this conclusion I uphold as valid the declarations of principles of law as set out in the case of *Latimer and others* v. *R. & D. R. R. Co.*, 39 S. C., 44, and *Wenzell* v. *Brewing Co.*, 48 S. C., 80; and I propose to give the reasons for this conclusion as briefly as practicable. The *status* of the shareholders in the two causes just cited and in the cause at bar are distinct. In the case of Latimer, it was alleged that the assignee of the lease made by the Chester and Lenoir Railroad of its property for ninety-nine years to the Charlotte, Columbia and Augusta Railroad Co. (which *assignee* was the defendant, Richmond and Danville Railroad Co.,) was engaged in the removal of the building material of a commodious depot and passenger station, so that said material would be lost to the Chester and Lenoir Railroad Co., and that when the directors of the Chester and Lenoir Railroad Co. was urged to take steps to stay the hand of the railroad marauder, such directors refused or neglected to intervene. Hence, when Latimer and others, as stockholders of the Chester and Lenoir Railroad Co., filed their bill on the equity side of the Court of Common Pleas for York County, S. C., to restrain the hands of the Richmond and Danville Railroad Co. in the removal of the building material belonging to the Chester and Lenoir Railroad Co., this Court held that, while there are exceptions to the general rule that the corporation whose property is taken must itself assert its right to the aid of the court of equity in such case, and not the stockholders of such corporations in their individual character, still that the said Latimer

and others as suing stockholders had not put themselves, by the allegations in their complaint, in the position required by the court of equity for them to sue. So, too, in the Wenzell case, *supra,* this Court held that there were exceptions to the general rule governing the presenting bills in equity, that such suits must be brought by the corporation; still that Wenzell failed to establish by the allegations of fact in his complaint that he was entitled to be regarded as having brought himself within such exceptions. In both the Latimer appeal, *supra,* and the Wenzell appeal, *supra, i*t was represented that the Chester and Lenoir Railroad Co. was still an entity—a going concern—and the Palmetto Brewing Company was an entity and a going concern. While, in the case at bar, the status of the Bank of Allendale from early in the year 1896 was that the legally expressed determination of its stockholders in a meeting thereof had ordered that the Bank of Allendale should go into liquidation—should wind up its affairs and return its capital stock to its stockholders, together with all profits, earnings and accumulations thereof —and that the officers of the bank were charged with the duty of collecting the assets and returning the same to the shareholders, and that in the years 1896 and 1897 sixty dollars on every hundred dollars of stock had been paid to every shareholder. By the act of 1890, chartering the Bank of Allendale, its capital stock was fixed at $50,000—of this $30,000 has been paid by such officers to its shareholders, thus leaving only $20,000 of such capital stock unreturned to the stockholders. The status of this—the Bank of Allendale—is far from a going concern. The duty is placed upon the officers of the bank to do this whole work of collecting the assets and paying them over to the stockholders. Such officers have accepted that trust, for they have already paid over to the shareholders $30,000 of the assets of the bank. Therefore, cannot we say that the *status* of the plaintiff here is quite distinct from that of Latimer in *Latimer* v. *R. R. Co., supra,* and *Wenzel* v. *Palmetto Brewing Co., supra?*

But let the issue be met fairly and squarely. In my judg-

ment, this plaintiff in the cause at bar has by the allegations of her complaint placed herself among the exceptions to the general rule, for these reasons : When the Bank of Allendale, in the year 1896, through its stockholders was placed in liquidation, it ceased to be any longer a going concern ; it could still sue and be sued, but it could not go further in the use of its assets in the business of banking by lending out its money, receiving deposits, buying or selling exchange ; yet notwithstanding this death, so to speak, as to new business from 1896 to the date of the suit, the plaintiff alleges in her complaint that the officers of the bank still operate as money-lenders, buying and selling exchange and receiving deposits.    The plaintiff and other stockholders are entitled to have the assets of the bank as they existed early in the year 1896 collected and turned over to them ; this the officers owe to them as shareholders as a legal duty.    The allegations of the complaint make out a case where these officers of the Bank of Allendale, who owe this legal duty to shareholders, are directly, deliberately and palpably violating and disregarding this legal duty owed to the stockholders, and this, too, to their serious injury.    If these trustees, the officers of the Bank of Allendale, are permitted to go unwhipt of justice, for it is alleged in the complaint, they have in three years dissipated through deficient business judgment and otherwise the assets of the Bank of Allendale so that only $6,000 of assets now exist and not a dollar in money ; whereas, by the report of the cashier in 1896, just prior to the order for liquidation, such assets amounted to $55,000 ; and after paying out the $30,000 already paid out to the shareholders, $25,000 should still be on hand, how long will it require for them to make way with the $6,000 of assets still left?    Do not the officers of the Bank of Allendale owe a duty to the stockholder—plaintiff—which they have invaded?    If so, she cannot go before a jury for the adjustment of her rights involved in this invasion by the defendants of the legal duty they owe her, for those rights are equitable ; but be that as it may, the doors of the court of

equity swing back very readily when a woman, who is a *cestui que trust*, denied by her trustees, not only her property but even the consolation of information touching her property, asks for admission into that Court! The general rule as laid down by this Court in *Latimer* v. *R. R. Co., supra,* is thus stated by Chief Justice McIver, in his lucid and able opinion in that case, at page 52, where he quoted these words from *Hawes* v. *Oakland,* 104 U. S., 450: "We understand the doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity, in his own name, a suit founded on a right of action existing in the corporation itself and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit some action, or threatened action, of the managing board of directors as trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers in connection with some other party, or among themselves, or with other shareholders, as will result in serious injury to the corporation, or to the interests of the other shareholders; *or where the board of directors, or a majority of them, are acting for their own interest in a manner destructive of the corporation itself,* OR OF THE RIGHTS OF THE OTHER SHAREHOLDERS, or *when* the majority of the shareholders themselves are oppresively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity" (italics mine). The case of *Hawes* v. *Oakland, supra,* was the case of a going concern. Here, as before remarked, the Bank of Allendale is in liquidation. Its assets are ordered to be turned over to the shareholders. In the midst of the performance of the duty of winding up the bank, the complaint alleges that the defendants are lending out the bank's money, receiving deposits from the general public, and buying and selling exchange, and the complaint further alleges that the defendants are men of poor business

judgment, who have lost $19,000 of the $55,000 of bank's assets, so that only $6,000 remain. That these defendants are lending money to the directors and to its officers, in violation of the laws of this State. I think, therefore, that it thus clearly appears that the complaint states facts sufficient to constitute a cause of action. In the case of *Stahn* v. *Catawba Mills*, 53 S. C., 529, Mr. Justice Jones, speaking for the Court, says: "It is also a well established rule that an application for redress within the corporation and refusal need not be alleged, if it be shown that the directors or managing board are themselves the wrongdoer in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock so as to control corporate action. In such a case it is reasonable to infer that an effort for redress within the corporation would be unavailing," citing a number of cases in support thereof.

The second and third grounds of demurrer are not passed upon by the Circuit Judge, and I will likewise pass them by.

The fourth ground of demurrer was abandoned.

Lastly, we will notice the fifth ground of demurrer, that several causes of action have been improperly united. I cannot agree with the Circuit Judge, for it must always be remembered that in equity, in many cases, very much has to be stated in the complaint that at first appears to sanction this view. If one good cause of action is stated, and there are others stated in the complaint which are not good, it is in the power of the persons injuriously affected by such mixture of actions to have the cause affecting him or them separately stated. *Glover* v. *Remley*, 52 S. C., 496. This would not necessitate a dismissal of the complaint. I am not sure that the act of 1898 would not confer the right upon the plaintiff to bring this action. The title of the act is "An act to provide for the winding up of the business of corporations whose charters have been forfeited," 22 Stat. at Large, 774. This is a remedial statute. In section 1 it is provided: "All *corpor-*

*ations,* whether they expire by their own limitations or be annulled by the legislature, *or otherwise dissolved,* shall be continued bodies corporate for the purpose, &c." Sec. 2 provides: *"Upon the dissolution in any manner of any corporation,* the directors * * * shall be trustees thereof, &c." (italics mine). It would seem that probably the words "whose charters have been *forfeited,"* is used in the popular sense of the word *forfeited,* something like a right or privilege or benefit lost. Certainly, when these shareholders reduced their capital from $50,000 to $20,000 or less, without the permission of the law, the corporation may be said to have lost or forfeited the privilege of banking under their charter. But the plaintiff's right does not rest of necessity upon this act of 1898; it existed long before. I do not think the complaint presents two causes of action, because it applies for a receiver and also asks for an accounting of the directors, as it is intimated in the judgment of the Circuit Judge.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and that the action be remanded to that Court, with leave to the defendants to answer within thirty days after the remittitur reaches that Court.

MESSRS. JUSTICES GARY AND JONES *concur in the result.*