## BROOKSHIRE v. FARMERS' ALLIANCE EXCHANGE.

RECEIVER—CORPORATIONS.—Where a solvent corporation has passed a resolution directing its directors to wind up the affairs of the corporation and return the stock to the contributors, a court of equity will not, at instance of a stockholder, appoint a receiver to wind up its affairs and to distribute the stock; *although,* the directors under the direction of the stockholders have invested the stock in bank stock, the charter providing that its funds should be primarily used in conducting a mercantile agency, although broad enough to include such investment, the stockholders having acquiesced in such investment for ten years, and this not being satisfactory, they have loaned the fund on good security, this also being acquiesced in by stockholders; some of the funds had been lost in conducting the business for which the corporation was formed; an overdraft of its managing agent had been paid, these acts having been done by previous directors, no fraud or mismanagement being charged and no negligence by directors having been shown.

Before J. P. CAREY, special Judge, Richland, July, 1905. Affirmed.

Action by H. E. Brookshire on behalf of himself and others against Farmers Alliance Exchange of South Carolina, Limited, *et al.* The following is the Circuit decree:

"At a meeting of the trustee stockholders of the Farmers' Alliance Exchange, held on the 29th day of October, 1902, a resolution was duly passed: 'That the State Exchange is hereby dissolved, and the directors are instructed to pay out the funds to the contributors through the county and sub-trustee stockholders, as provided by the charter, as soon as

practicable.'    Article 14 of the plan of the Alliance Exchange
provides:

" 'Whenever this corporation may be dissolved, either by
limitation of its charter or from any other cause, the stock
shall be returned through the county and sub-trustee stock-
holders to the original contributors.'    Under this authority,
the board of directors were winding up the affairs of the
corporation and preparing to return the stock, or a pro rata
thereof, to those entitled thereto.    In March, 1903, this
action was brought, whereby it was sought to have the Court
take charge of and wind up the affairs of the Alliance Ex-
change and appoint a receiver as an aid thereto.    It is not
alleged or claimed by the plaintiff that the Alliance Exchange
is insolvent.    On the contrary, the evidence shows that it
owes but little, if anything.    It is not only solvent, but has
about seventeen thousand dollars to be returned to its stock-
holders.    The question for me to determine is whether the
Court should take the liquidation of the Alliance Exchange
out of the hands of the board of directors, where the stock-
holders and plan of organization have placed it, and itself
through the aid of a receiver wind up its affairs.    To justify
the Court in taking this course the necessity therefore should
be very clear.    'A court of equity is disinclined to take the
control and management of the affairs of a corporation out
of the hands of its officers and directors and substitute its
receiver therefor.    Nor are mere irregularities in the man-
agement of a corporation, without fraud committed or in-
tended, sufficient for the appointment of a receiver, courts
of equity being very reluctant to appoint receivers for
corporations, because such appointment is a practical dis-
placement of the boards of directors and the lawfully consti-
tuted corporate authorities.'    23 Ency. of Law, 1021-23.

"The burden is upon the plaintiff to make this necessity
appear.    The danger of loss of the funds of the Alliance
Exchange or serious impairment thereof is alleged in the
complaint as one of the grounds for the Court to take charge
of the same.    The plaintiff charges that the different boards

of directors of the exchange for many years failed to use the funds entrusted to them in the manner prescribed by the charter and plan of organization, which resulted in loss to the stockholders. The corporation was organized in the year 1889, and of the capital stock there was paid in the sum of $23,395.35. The funds now in hand amounts to $16,465.65, with some interest thereon. It is evident, therefore, that there has been a diminution of the original fund. But how did it occur? The charter is very broad, but the main business engaged in by the Alliance Exchange was that of conducting an agency for the purchase and sale of supplies for the benefit of the Farmers' Alliance. This business was certainly authorized by the charter and plan of the exchange. M. L. Donaldson was the first manager of the agency, which position he held until the first day of January, 1892. The testimony shows that the business was not successful under his management, and resulted in a loss to the Alliance Exchange of over $4,000. D. P. Duncan was his successor, and held the position of manager from 1892 until 1900, and his management resulted in a loss to the exchange of $2,600. These losses resulted from the conduct of business authorized by the charter and plan of organization through the regular agents of the corporation. These agents were acting within the scope of their authority and the corporation is bound by their acts. There is no charge in the complaint that they were guilty of any fraud or mismanagement for which they should be held liable to the exchange.

"Duncan is not made a party to the suit and Donaldson is made a party as a creditor, the complaint alleging that the Alliance Exchange is indebted to him. The testimony satisfies me that the diminution of the capital stock was the result of unsuccessfully conducting a business authorized by the charter and plan. The corporation and its stockholders must therefore bear the loss. It is also charged by the plaintiff that the funds of the exchange have been used by the directors for the purpose of reorganizing suspended alliances and paying salaries and expenses of an organizer of

sub-alliances, and for the purpose of paying the salaries of managers and officers of the exchange and for other unwarranted uses and purposes. There is no proof of these charges, but, on the contrary, the proof is the other way. It is also charged by the plaintiff that the board of directors has failed and refused to pay many just claims against the exchange, thus subjecting the funds of the corporation to danger and impairment in paying the costs of litigating said claims. There is no proof of this. The testimony satisfies me that the exchange owes practically nothing. The only debts hinted at in the testimony are the claims of M. L. Donaldson and J. C. Coit, which are disputed by the board of directors, and neither of these gentlemen have testified in this case as to any debts. But even if they have valid claims against the exchange, they can sue the corporation. This action is brought for the benefit of stockholders and not creditors. That there is no danger here is conclusively shown by the fact that notwithstanding an order has been passed in this case allowing creditors to prove their claims, none have been established. It is also charged by the plaintiff that repeated efforts have been made by the stockholders of the exchange to have the directors carry out the purposes of the exchange or to wind up the corporation. The proof is that the directors have always obeyed the instructions of the stockholders and were promptly proceeding to wind up the affairs of the exchange under the resolution of the stockholders, till their efforts were arrested by the filing of this suit. It is further charged by the plaintiff that many of the sub-alliances, owning stock in the exchange, have become inoperative and their members become scattered and it is impossible to have a majority of the stock represented at any meeting of the stockholders. The testimony shows that about ninety per cent. of the stock was represented at the meeting of stockholders on October the 29th, 1902, which passed the resolution to go into liquidation. The vote was $14,827 of the stock for the resolution and $4,337 against it. It is further charged by the plaintiff that the board of

directors own, manage or control the majority of the stock of the exchange represented by the active stockholders and are thereby enabled to control the action of the corporation. Of this charge there is no evidence whatever. I do not think the board of directors are trying to control the stockholders to the injury of the minority stockholders. It is further charged by the plaintiff that the board of directors had in the year 1900 on deposit in the Palmetto Bank and Trust Company about $20,000 and that they invested the same in a personal loan, and that no part of the same is being used for the charter purposes of the corporation. The history of this fund is that in the year 1893 the agency business of the exchange not being successful, the funds of the same were invested in stock in the Farmers and Mechanics Bank and used in a banking business. This was expressly authorized by the stockholders and has been acquiesced in by them for over ten years, and I do not think at this late day can be complained of by dissatisfied stockholders. It was authorized and ratified and acquiesced in by them. 'An application for a receiver is not entitled to favorable consideration when the plaintiff has lain for a long period of years and quietly acquiesced in a condition of affairs which he seeks to change by obtaining a receiver.' High on Receivers, 14. This was done by a previous board of directors, and even if unauthorized would furnish no ground for taking the affairs of the corporation out of the hands of the present board and appointing a receiver. 'A remote or past danger will not suffice as a ground of relief, but there must be a well grounded apprehension of immediate injury. And where the wrong complained of occurred, if at all, several years before the application for the relief, and so long since as to afford no ground for apprehension of impending danger, and no act is alleged as being now threatened, a receiver will not be allowed.' High, 13-14. That a corporation has lost the greater part of its property and permanently abandoned its business is not alone ground for the appointment of a receiver for its remaining assets on the application of

minority stockholders. It must be shown in addition that
its officers have been guilty of such mismanagement of its
affairs as renders a receivership necessary to preserve the
existing corporate property. *Clark* v. *Linseed Oil Company,*
105 Fed. Rep., 787, 23 Ency. of Law, 1022. Nearly all of
the matters complained of by the plaintiff in this case hap-
pened long ago and under the management of previous
boards. The board of directors in 1900 found the funds of
the exchange invested in stock of the Farmers and Mechan-
ics Bank. The dividends received on this stock were not
satisfactory and a sale of the stock was made to J. P.
Matthews at par, less $1,850, the amount of an overdraft
made by the agent of the corporation, D. P. Duncan.
The overdraft was for $2,600, but $750 of the amount was
paid from the fund realized from sale of evidences of in-
debtedness. The note of the said J. P. Matthews was taken
for said stock for $16,465.65 and secured by a deposit of
$20,000 of the capital stock of said bank. In 1902, the
Palmetto Bank and Trust Company bought the business and
property of the Farmers and Mechanics Bank, and other
notes secured by stock of the Palmetto Bank and Trust
Company were given by J. P. Matthews and endorsed by
Matthews and Bauknight. The fund is now in this shape
and amply secured. Do these transactions justify the ap-
pointment of a receiver? I do not think so. Much has been
said about the directors acting outside of the charter and
plan of organization. The charter, after enumerating many
things which the exchange could do, uses these words: 'And
to conduct all other enterprises that may be necessary and
desirable to their profit and benefit.' This is broad enough
to cover all transactions complained of. The plan of the
organization provides that the 'Capital stock shall be a sacred
trust fund to be used only in the purchase of goods.' Ever
since the exchange ceased to purchase goods the different
boards of directors have endeavored to preserve the fund
and have done so. The board, in putting the fund in its
present shape, used good judgment, and did an act resulting

in a benefit to the stockholders. Complaint has been made against them for paying the overdraft of the agent of the corporation. There is no proof before me that this overdraft was for obligations for which the corporation was not liable. The interest on the fund since the change of investment amounts to much more than the overdraft. There is no proof that this interest has been wasted or illegally used. In addition to this, the stockholders have acquiesced in this change of investment ever since it was made, and with full knowledge thereof have in meeting assembled practically endorsed the action of the directors by directing them to return the fund to the original contributors. The fund is practically in money, for it can be converted into money on short notice.

"The case of *Matthews* v. *Bank*, 60 S. C., 183, 38 S. E., 437, has no application here. There the stockholders at a regular meeting authorized the directors to pay out its assets to the stockholders. They paid out a part of the assets to the stockholders and then commenced a banking business, lending money to themselves and others, and losing assets by bad management. The proof in this case shows no such state of facts, but shows that as soon as the directors were directed by the resolution of the stockholders to do so, they proceeded to wind up the affairs of the corporation and to obey the resolution. In the recent case of *Klugh* v. *Coronaca Milling Co.,* 66 S. C., 100, 44 S. E., 560, it was held that minority stockholders seeking to wind up the affairs of a corporation for negligence, or mismanagement on the part of its officers or board of directors, must show on the part of the managers: (1) fraudulent acts, (2) *ultra vires* acts, (3) negligence of corporate directors. The testimony fails to convince me that the present or any other board of directors of the exchange have been guilty of fraudulent acts, but does satisfy me that they have acted in good faith towards the stockholders, and nearly always under their instructions and with their approval. I see no such *ultra vires* acts as justify putting the exchange in the hands of a receiver. I

have already discussed this question. Especially is this true at this late day. In the case of *Johnstone* v. *Railroad Company*, 39 S. C., 55, 17 S. E., 512, the Court uses this language: 'As the complaint shows that this lease was entered into as far back as 1886, about five years before this action was commenced, and as it does not show that any dissatisfaction even has heretofore been expressed therewith either by the directors or stockholders, it is very clear that even if the lease was made without authority originally, yet it can afford no grounds for this action brought by two of the stockholders.' See, also, *Johnson* v. *Rock Hill*, 57 S. C., 381, 35 S. E., 568.

"Is there negligence on the part of the corporate directors justifying the appointment of a receiver? I think not. The investment made by the board of directors shows good management and not negligence. The fund was put out at interest and abundantly secured and can be converted into cash at any time. There is no danger to the fund. As to any accounting, the directors have accounted in this case and have for distribution the funds which came into their hands. The case as I see it, is about this: the directors have on hand about seventeen thousand dollars belonging to the original contributors, and the question is, shall the Court take charge of it and administer it, or permit the directors to return it under the resolution of the stockholders and plan of the organization? It is said the plan is impracticable. It is the corporation's own plan adopted by all sub-alliances. I do not regard it any more difficult than for the Court to undertake to distribute the fund, and it is certainly much cheaper.

"The plaintiff has failed to make such a showing as justifies taking the affairs out of the hands of the directors, who are charged with the liquidation thereof, and entailing upon the fund the expenses of a receivership and the heavy costs of administering the affairs of the corporation by the Court. The action having failed in its purpose, it follows that the complaint should be dismissed.

"It is, therefore, ordered and adjudged, that the application to the Court to take charge of the affairs of the Alliance Exchange and appoint a receiver therefor be denied and the complaint dismissed, and that the plaintiff pay the costs of this action."

From this decree the plaintiff appeals.

*Messrs. James S. Verner* and *Bellinger, Townsend & Haskell,* for appellant. *Mr. Verner* cites: *Members of sub-alliances, are stockholders:* 54 S. C., 440. *Relation between governing body and directors is that of principal and agent:* 66 L. R., 265; Pom. Eq. Jur., 1090; 21 Wall (22 Law ed., 492); 39 S. C., 55; 60 S. C., 200; 22 Stat., 774. *Controlling body has been guilty of:* 1, *fraudulent acts;* 2, *ultra vires acts;* 3, *negligence;* 4, *the capital is in danger:* 66 S. C., 100; 60 S. C., 200; 66 S. C., 491; 19 Stat., 541; *Stahn* v. *Catawba Mills,* 53 S. C. *Doctrine of estoppel cannot apply here:* 12 S. C., 350; 67 S. C., 446; 35 S. C., 88; 29 S. C., 55; 19 Stat., 541; 66 S. C., 503; Code of Proc., 190, 191; 29 S. C., 491.

*Messrs. Lyles & McMahan* and *Hunt, Hunt & Hunter,* contra, cite: *If investment in bank stock was ultra vires it had been remedied when this action was commenced:* High on Rec., sec. 11.

December 18, 1905.   The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.   This Court is fully satisfied with the reasoning and conclusions of the Circuit Judge.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE WOODS *did not sit in this case because disqualified.*