7872

CHISOLM v. CAROLINA AGENCY CO.

1. RECEIVER.—WHERE A CORPORATION ceases to be a going concern and there is ground for an inference that it is in eminent danger of insolvency, its assets scant and probable expense of litigation and existence of some creditors and possibility of others, a receiver may be appointed.

2. CORPORATIONS.—MINORITY STOCKHOLDERS may maintain an action against the corporation for alleged mismanagement of the corporate affairs resulting in loss to the stockholders, where such redress could not reasonably be expected through corporate action.

Before MEMMINGER, J., Richland. October, 1909. Affirmed.

Action by E. N. Chisholm *et al.* against Carolina Agency Co., W. A. Clark *et al.* Defendants appeal.

*Messrs. Shand & Shand, Washington Clark, Weston & Aycock* and *J. P. K. Bryan* for appellants. *Messrs. Shand & Shand* cite: *Allegation that one stockholder dominated the*

*meeting is not sufficient:* 213 U. S. 450; 196 U. S.; *Doctor v. Harrington;* 73 S. C. 134. *No cessation of business:* 43 S. W. 748; 73 S. C. 135. *It is duty of board of directors to sue for default of treasurer:* 69 N. Y. 164; 6 La. R. 30; 30 Fed. R. 302. *Failure to require bond of treasurer is not such negligence as entitles plaintiff to relief demanded:* 3 Paige 232; 147 Pa. St. 152; 82 Ky. 374; 37 N. J. Eq. 356; 145 U. S. 132. *Appointment of receiver should be used only as a dire resort: Miller v. Land Co.,* 53 S. C.; 3 Cook on Corp., sec. 863; 2 Id. 746; 105 Ala. 665; 37 Atl. R. 203; 23 Ency. 18, 19; 23 Ency. 1023; 73 S. C. 132; 6 Pom. Eq. 63-8; 28 S. E. R. 612; 1 Mor. Priv. Corp., secs. 281, 285; 37 At. R. 203. *A receiver may be refused and the Court pass on the merits:* 5 Rich. Eq. 342; 2 Cook on Corp., sec. 743; 3 Paige 222; 213 U. S. 435; 196 U. S. 519; 18 How. 331; 147 Penn. St. 141; 22 Hun. 150; 88 N. Y. 52; 37 N. Y. 318; 69 N. Y. 154.

*Messrs. Frank G. Tompkins, Adam H. Moss* and *Nelson, Nelson & Gettys,* contra. *Messrs. Nelson, Nelson & Gettys* and *Frank G. Tomkpins* cite: *When the directors are the wrongdoers and control the majority of the stock such action may be maintained:* 48 S. C. 83; 53 S. C. 519; 60 S. C. 183; 66 S. C. 100; 82 S. C. 382. *Receiver properly appointed:* 23 Ency. 1022; 30 S. C. 204; Code 1902, 265.

April 21, 1911. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. This action was brought by minority stockholders against the defendant corporation and its president and directors to wind up its affairs and distribute its assets, and for the appointment of a receiver. The directors were charged with negligence in the management of the corporate property resulting in loss to the corporation and its stockholders, and one of the purposes for which the aid of a receiver was desired was the better to

ascertain and enforce the liability of the directors for their alleged mismanagement. ·

Judge Memminger, by his order dated October 23, 1909, appointed W. W. Cobb as receiver, enjoining interference with him, calling in creditors to establish their claims in this action, and authorizing the receiver, in behalf of the corporation, to institute such actions in law or equity as he considered necessary in discharge of his duties.    The hearing was had on the sworn complaint and affidavits submitted in support thereof and on the return of the defendants and affidavits submitted by the parties plaintiff and defendant at said hearing, including the stock certificate book, the minute book and account book of the defendant Carolina Agency Company.    Judge Memminger held that a receiver should be appointed, without going into detail or assigning other reason.

The appellants contend that the facts do not justify the appointment of a receiver, that there was no sufficient showing of insolvency or imminent danger of insolvency of the corporation or the directors, that a receiver is unnecessary as the relief demanded could be rendered otherwise, that the directors were not negligent at the institution of the said suit, and if there was ever previous negligence, it was long before the suit, that no creditors are complaining and practically none are existing.

The following facts appear:

The Carolina Agency Company is a corporation chartered March 26, 1907, under the laws of this State, with its principal place of business in the city of Columbia, S. C., with authorized capital fixed at $150,000.00 divided into 15,000 shares of the par value of $10 per share, its charter purposes being "general insurance, brokerage, real estate and commission agency, etc.," but it is conceded that the corporation at no time engaged in any other business than that of acting as general agent, in South Carolina, for State Mutual Life Insurance Company of Rome, Georgia.

The plaintiffs are stockholders of the corporation representing 520 shares.

The defendants, W. A. Clark, Wilie Jones, T. S. Bryan, J. Fuller Lyon, Jno. R. Blake, Willie Stackhouse and T. A. Amaker are directors of the corporation, W. A. Clark being president.

Prior to the incorporation of the Carolina Agency Company defendant Jno. Y. Garlington had a contract with the State Mutual Life Insurance Co. of Rome Ga., for State agency of that company in South Carolina, and the main purpose of the organizers of the Carolina Agency Company was to take over the said agency of the State Mutual Life Insurance Company.

Accordingly defendant Jno. Y. Garlington subscribed for 7,500 shares of the capital stock of defendant corporation to be paid for by an assignment of his contract with the State Mutual Life Insurance Co., and upon the assignment of said contract to the defendant corporation, the stock was issued as fully paid up stock, under the stipulation that it should be placed by Garlington with certain trustees to be held by them and upon which no dividend was to be paid until the income of the agency should be so established as to insure to the stockholders a semi-annual dividend on all of the stock of 10 per cent. and a surplus of not less than 20 per cent. on the entire capital stock shall have been laid up, with a further stipulation that at no time should Garlington offer of his holdings of stock for sale more than 1,000 shares in any one year and then at not less than par, and it was also provided that all other stock issued should be entitled to be paid out of the net income of the issue of said stock.

Pursuant to this arrangement Garlington placed the stock in the hands of W. A. Clark, Wilie Jones and T. S. Bryan as trustees. This stock appears to be still in the hands of the trustees, although the complaint alleges that this stock

was sold by Garlington to the Seminole Securities Company for a like amount of stock in that company.

On April 1, 1907, W. A. Clark, Wilie Jones, T. S. Bryan, J. Fuller Lyon, J. R. Blake, Wm. Stackhouse, Thos. A. Amaker and Jno. Y. Garlington were elected directors, W. A. Clark was elected president, Wilie Jones vice president and Jno. Y. Garlington general manager and treasurer.

Garlington was never required to give any bond as treasurer, although section 9 of the by-laws of the corporation provided that such bond shall be given for the faithful discharge of his duty in such amount as may be prescribed by the directors.

While acting as treasurer, Garlington received large sums of money including the proceeds of the sale of 4,877 shares of the capital stock and failed to render any satisfactory statement of his account as treasurer, and he kept no books showing his receipts and disbursements as treasurer.

The directors Clark, Wilie Jones and Bryan must have known of these receipts by Garlington, certainly as early as February 6, 1908, as there appears in Exhibit A, the instrument executed by Garlington placing his 7,500 shares in their hands as trustees, a recital that "the said 7,500 shares have been issued and delivered to Jno. Y. Garlington and about 5,000 shares of stock have been subscribed *and paid for* by other parties."

It appears that the stubs in the stock certificate book shows that 13,854 shares were issued of which 1,477 were cancelled. Deducting the 7,500 shares in Garlington's name there remains outstanding 4,877 shares of the par value of $48,777.00. The precise date at which these shares were sold does not appear but it is very probable that most of the sales took place in 1907, notwithstanding a resolution of the directors providing that only 3,000 shares should be sold at par in 1907, 3,000 shares in 1908, and the remaining 1,500 at such time and on such terms as the directors may prescribe. The president and directors seemed to have

had unbounded confidence in the integrity of this unbonded officer. All this time up to May, 1908, Garlington was permitted to keep the general office at Laurens, S. C., and conduct it according to his own methods without supervision, notwithstanding in April 1, 1907, he was directed to move the general office to Columbia, S. C., at the earliest practical date. Besides receiving the proceeds of the sale of stock, Garlington also received a very large sum in insurance premiums and renewals, $70,000 and from this amount and the proceeds of sale of stock he turned over to W. A. Clark, treasurer, less than $10,000 of assets of any value, including $1,849.00 in cash. Early in 1908 Garlington began to devote his energies to the organization of the Seminole Securities Company and from after March 1, 1908, little or no business was done for the State Mutual, and in consequence, the business and income of the Carolina Agency Co. was greatly crippled. He resigned as general manager and treasurer on June 5, 1908, and was succeeded by W. A. Clark as treasurer and L. W. Stansell as general manager. Garlington claims to have shipped by express to Columbia on June 2, 1908, a box containing such books and papers as he had in possession and delivered to W. A. Clark the receipt of the express company therefor, but the package never came to hand and the directors accepted from the express company in settlement $50.00 the amount of value placed upon the package by Garlington.

Garlington rendered a statement on June 8, 1908, in which he claimed a credit of $15,000 alleged to have been paid out as "commissions to salesmen." This was unsatisfactory to the directors and he was asked to make a more complete and accurate statement, which he failed to do. After several atttempts to secure a settlement with Garlington suit against him was instituted January 4, 1909, for an account, in which the Carolina Agency Co. alleged that Garlington was indebted to an amount at least $25,000 and had certain real estate in Laurens county appearing in his name attached.

On June 29, 1909, judgment was rendered on this claim for $25,000 against Garlington. Respondents claim that it was negligent to limit the claim against Garlington to $25,000, when it was apparent that his liability was much greater.

The State Mutual Ins. Co. ceased to do business in this State on April 1, 1908, having failed to renew its license, and in consequence the Carolina Agency Co. could not prosecute its work in soliciting insurance. Later the State Mutual Ins. Co. denied the claim of the Carolina Agency for its renewal commissions, contending that its withdrawal from the State operated to cancel the contract with the Carolina Agency Co., the contract between the parties stipulating for the right of the State Mutual to withdraw at any time from the territory, for an immediate termination of the contract should the license be at any time withheld or revoked, and that renewal commissions were limited to the time while the contract shall remain in force.

This withdrawal of the State Mutual Ins. Co. completed the ruin of the Carolina Agency Co.

A financial statement of its assets and liabilities made December 31, 1908, by Charles M. Tew, an auditor, shows:

### Assets.

| | |
|---|---|
| Charter and Franchise | $ 75,000.00 |
| Renewal Interest | 50,000.00 |
| Notes receivable | 4,869.50 |
| Cash, general account | 522.50 |
| Cash, premium account | 159.55 |
| | $130,551.74 |

### Liabilities.

| | |
|---|---|
| Capital Stock | $123,770.00 |
| Premium account | 159.55 |
| Notes discounted | 1,000.00 |
| Surplus | 5,622.19—$130,551.74 |

## GAINS AND LOSSES.

GAINS

| | | |
|---|---|---|
| Renewal commissions.........$ | 1,271.46 | |
| Interest................... | 332.62 | |
| Loss and profit............. | 651.21—$ | 2,255.29 |
| Item see list. | | |

LOSSES.

| | | |
|---|---|---|
| Salaries................... $ | 2,256.30 | |
| Agents' expenses............ | 920.90 | |
| General expenses............ | 822.12 | |
| Profit and loss.............. | 420.72—$ | 4,420.04 |
| Net loss on operation......... | | 2,164.75 |
| Dividend.................. | | 1,206.75 |

| | | |
|---|---|---|
| Total loss................... | $ | 3,371.50 |
| Surplus June 1, 1908.........$ | 8,993.67 | |
| Surplus Dec. 31, 1908......... | 5,622.19 | |

This marvelous "surplus" is explained in this way by the auditor: "To make up the difference between these liabilities $125,170, and the visible assets $9,163.69, it was necessary to assign arbitrary valuations to the business as taken over from Jno. Y. Garlington, for which stock of the par value of $7,500 had been issued to him; and also to the contract with the State Mutual Life Ins. Co. The former was called 'charter and franchise' and was entered on the books at a valuation of $75,000. The latter was called 'renewal interest' and was valued at $50,000."

Out of this elusive and illusive surplus three dividends have been paid, although the by-laws only authorize dividends to be declared from the "net earnings" of the company.

The Carolina Agency Company was not doing any active business when this suit commenced, having closed its office and stored the records and office furniture in the basement

room of the Carolina National Bank, accessible however to officers and stockholders, and have discontinued all salaries after June 30, 1909, and a resolution has been adopted authorizing that the sum that may be collected from the Garlington judgment be dstributed among the stockholders. There was evidence, therefore, that it is not a "going concern," and there was ground for an inference that the company is in imminent danger of insolvency, in view of the immense shrinkage of its capital stock, now only represented by the judgment against Garlington with the uncertainty as to what may be realized therefrom, the cessation of its business after running at a loss, its scant assets, the probable expenses of litigation in connection with the Garlington judgment and the contemplated action against the State Mutual Ins. Co. for damages for alleged arbitrary withdrawal from the State, and the existence of some creditors, and the possibility of others.

The Code, section 265, provides that a receiver may be appointed when a corporation * * * is "in imminent danger of insolvency."

There is also ground for holding that directors Clark, Jones and Bryan own and directly control a majority of the stock and that the redress against them for alleged mismanagement of the corporate property resulting in loss to the stockholders could not reasonably be expected through corporate action and that the plaintiffs as minority stockholders could maintain this action. *Latimer* v. *Railroad,* 39 S. C. 44, 17 S. E. 258; *Wenzel* v. *Brewing Co.,* 48 S. C. 80, 26 S. E. 1; *Stahn* v. *Catawba Mills,* 53 S. C. 519, 31 S. E. 498; *Matthews* v. *Bank,* 60 S. C. 183; 38 S. E. 437; *Klugh* v. *Milling Co..* 66 S. C. 106, 44 S. E. 566; *Brookshire* v. *Exchange,* 73 S. C. 137, 52 S. E. 867; *Sigwall* v. *City Bank,* 82 S. C. 385, 64 S. E. 398.

The power of the court of equity to appoint a receiver "should be exercised with great caution lest the injury

thereby caused be far greater than the injury sought to be averted," as declared in *Miller* v. *Land Co.*, 53 S. C. 367, 31 S. E. 281, still in a proper case it should be done, and we are not prepared to hold that the action of the Court in this instance was unwarranted.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.