SEVERT T. GUNDERSON *et al.*

*v.*

THE ILLINOIS TRUST AND SAVINGS BANK.

*Opinion filed October 25, 1902—Rehearing denied December 5, 1902.*

1. CORPORATIONS—*right of stockholders to intervene in foreclosure suit.* Stockholders in a corporation are not necessary parties to a foreclosure suit, and can only intervene in its behalf by showing the existence of a defense which the corporation neglects or refuses to make.

2. SAME—*section 18 of the Corporation act construed.* Section 18 of the Corporation act, which provides that persons assuming to exercise the powers of a corporation before all stock is subscribed in good faith shall be jointly and severally liable for all debts and liabilities made by them, does not limit creditors of the supposed corporation to such remedy alone.

3. SAME—*corporation may be de facto without complete organization.* If an association is in the exercise and use of a corporate franchise under color of a legal organization, in pursuance of the general

law, it is a corporation *de facto* as to third persons dealing with it, and subject to the same liabilities as a corporation *de jure*.

4. SAME—*certificate of complete organization is prima facie evidence of corporate existence.* A certificate of complete organization, executed and recorded as provided by law, is *prima facie* evidence of corporate existence, and is sufficient to justify third parties in dealing with the corporation without investigating to ascertain whether or not the subscriptions to stock were in bad faith.

5. SAME—*existence of personal liability of directors does not destroy right against corporation de facto.* The fact that directors of a supposed corporation may be personally liable to creditors under section 18 of the Corporation act does not destroy rights which such creditors may have against the company as a corporation *de facto*.

6. SAME—*when stockholders cannot intervene in foreclosure.* Stockholders cannot intervene in a proceeding to foreclose a trust deed given for a purpose not *ultra vires*, upon the ground the greater portion of the stock subscribed was fictitious and was surrendered after a certificate of organization was obtained, and that the officers and directors acted fraudulently in certain matters which, while entitling the stockholders to relief against them personally, have no connection with the execution of the trust deed and bonds.

*Gunderson* v. *Illinois Tr. and Sav. Bank*, 100 Ill. App. 461, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

ALEX. M. WOOLFOLK, for plaintiffs in error:

All persons desiring it must be allowed to intervene in a suit and be made parties thereto, who have a substantial interest, either legal or equitable, in the subject matter of the litigation and who may be materially affected by the decree to be rendered, and such persons can make application at any time while the record is within the control of the court. *Marsh* v. *Green*, 79 Ill. 387; *Dorman* v. *Brereton*, 140 id. 156; *American Bible Society* v. *Price*, 115 id. 623; *Shannahan* v. *Stevens*, 139 id. 427; *Green* v. *Grant*, 143 id. 69; *Heffron* v. *Gage*, 149 id. 192.

Stockholders will be allowed to intervene and defend when a default has been allowed, and the stockholders

allege collusion and show an apparently good defense. 3 Cook on Corporations, (4th ed.) sec. 848; *Guarantee Co.* v. *Duluth Co.* 70 Fed. Rep. 803; *Morrell* v. *Little Falls Manf. Co.* 46 Minn. 260; *Farmers' Trust Co.* v. *Railway Co.* 67 Fed. Rep. 49; *Majors* v. *Tousig,* 20 Colo. 44.

All the facts necessary to warrant the intervention of the stockholders under the foregoing authorities appear on the face of the petition, and many others were shown. One of the defenses so appearing was, that the Medinah Temple Company was and is a mere pretended corporation under section 18 of the Corporation law, and that the legislature has never conferred upon pretended corporations or pretended boards of directors the power to borrow money and execute deeds of trust upon the corporate property, and that such acts are *ultra vires,* null and void. Reese on Ultra Vires, sec. 3; *Stowe* v. *Flagg,* 72 Ill. 387; *Hadley* v. *Commissioners,* 105 Mass. 526; *Franklin Bridge Co.* v. *Wood,* 14 Ga. 80.

A corporation can only exercise such powers as are granted by the legislature. Where it does an act for the doing of which no authority has been granted by the legislature, such act is called *ultra vires,*—that is, beyond its power,—and such act is consequently wholly void and of no legal effect. *Building Ass.* v. *Bank,* 181 Ill. 42; *Fritz* v. *Building Society,* 186 id. 183; *Lurton* v. *Loan Ass.* 187 id. 143; *Brewing Co.* v. *Klassen,* 185 id. 37; *Thomas* v. *Railroad Co.* 101 U. S. 71; *Transportation Co.* v. *Pullman Car Co.* 139 id. 24; *Rodgers* v. *Belting Co.* 184 Ill. 574; Morawetz on Corporations, (2d ed.) sec. 648.

The legislature has recognized and provided both for corporations and pretended corporations; for a board of directors and a pretended board. Upon the one class it has conferred powers, but on the other it has only imposed penalties. Rev. Stat. chap. 32, secs. 1-6, 18.

The statutory remedy provided by section 18 is necessarily exclusive of every other remedy. It conferred a new substantial right or cause of action which was un-

known to the common law, and hence is exclusive of all other remedies. Hence such creditors or bondholders, if any there be, cannot abandon the remedy provided by statute (that of suing the directors) and attempt to encumber the property of the company with a deed of trust executed by authority of the directors or pretended directors, in order to shift all liability from themselves to the corporation. 3 Thompson on Corporations, sec. 3020; Endlich on Interp. of Statutes, sec. 154; 7 Ency. of Pl. & Pr. 372, *et seq.;* Sutherland on Stat. Const. sec. 399.

All parties dealing with corporations are presumed to know the law and cannot plead ignorance of the statutes, but are bound by the proper interpretation thereof. The statute (sec. 18) was evidently made broad enough to embrace both corporations and pretended corporations, so as to prevent evasions of the law on the plea of ignorance as to the true character of such corporation. *Building Ass.* v. *Bank,* 181 Ill. 42; *Franklin Co.* v. *Lewiston Inst. for Savings,* 68 Me. 43; *Steamship Co.* v. *Dry Dock Co.* 28 La. Ann. 173; *Thomas* v. *Railroad Co.* 101 U. S. 71; *Transportation Co.* v. *Pullman Car Co.* 139 id. 24; Reese on Ultra Vires, secs. 46-72.

A pretended corporation cannot be either a corporation *de facto* or *de jure,* and such infirmities in its organization may be taken advantage of collaterally, in any form in which they can be properly called in question. 7 Am. & Eng. Ency. of Law, (2d ed.) 655; Reese on Ultra Vires, sec. 3, p. 4; *Railroad Co.* v. *Railroad Co.* 8 C. E. Green, 441; *Croton Turnpike Co.* v. *Ryder,* 1 Johns. Ch. 611; Morawetz on Corporations, (2d ed.) secs. 27, 122, 137, 67, 737, 738; *Harris* v. *McGregor,* 29 Cal. 124; *People* v. *Selfridge,* 52 id. 331; *McIntyre* v. *Ditching Co.* 40 Ind. 104; *Indianapolis Co.* v. *Herkimer,* 46 id. 149; *Reed* v. *Railway Co.* 50 id. 342; *Richmond Factory Co.* v. *Alexander,* 61 Me. 357; *Doyle* v. *Misner,* 42 Mich. 332; *Utley* v. *Tool Co.* 11 Gray, 138; *Abbott* v. *Smelting Co.* 4 Neb. 418; *Academy of Music* v. *Flanders Bros.* 75 Ga. 14; *Gas Co.* v. *Dwight,* 29 N. J. Eq. 242.

A corporation *de facto* is always based on *bona fide* subscriptions, and has manifested an honest attempt by the incorporators to organize a corporation authorized by the laws of the State. The necessary steps to perfect the organization are generally taken, but through carelessness or ignorance some feature is omitted, like recording the final certificate, which involves no moral turpitude. *Bushnell* v. *Ice Machine Co.* 138 Ill. 67; *President* v. *Thompson,* 20 id. 198; *Rice* v. *Railroad Co.* 21 id. 93; *Baker* v. *Backus,* 32 id. 79; *Ramsey* v. *Insurance Co.* 55 id. 311; *Railway Co.* v. *Hines,* 108 id. 617.

EUGENE E. PRUSSING, and CASTLE, WILLIAMS & SMITH, for defendant in error:

The stockholders of a company are not necessary parties to a foreclosure suit brought against the company. *Great Western Tel. Co.* v. *Barker,* 56 Ill. App. 402; 166 Ill. 150; 3 Cook on Corporations, (4th ed.) sec. 844, p. 1906; *Ross* v. *Knapp,* 77 Ill. App. 424; 181 Ill. 392; *Ward* v. *Farwell,* 97 Ill. 593; *Foster* v. *Railroad,* 146 U. S. 88; *Railroad Co.* v. *Howard,* 7 Wall. 392; *Gas Co.* v. *West,* 50 Iowa, 369.

The petitioners being stockholders of the company, . are estopped from questioning the validity of its incorporation. The invalidity, if any, can only be questioned by the State. *Thomas* v. *Railway Co.* 164 Ill. 634; *Ramsey* v. *Insurance Co.* 55 id. 311; *Bushnell* v. *Ice Machine Co.* 138 id. 67; *Keigwin* v. *Drainage Comrs.* 115 id. 347.

The only point raised against the validity of the incorporation is, that a part of the subscriptions to stock were made in bad faith. Counsel cites no case, construing our statute, holding that lack of good faith in subscriptions renders the incorporation void, and we submit that good faith in subscriptions is not essential to the validity of the incorporation.

Section 3 of the Corporation act provides:. "As soon as may be after the capital stock shall be fully subscribed the commissioners shall convene a meeting of the sub-

scribers for the purpose of electing directors or managers and the transaction of such other business as shall come before them." Hurd's Stat. chap. 32.

It will be noticed that there is no provision that the subscription shall be in good faith. It is true that the words "good faith" appear in section 18 as quoted by counsel; but that section does not say that bad faith of subscribers shall invalidate the incorporation,—it only provides that if the directors assume to exercise corporate powers when the subscription is in bad faith, they (the directors) shall be liable for all debts made by them.

If there is a law authorizing incorporation, and a company has attempted to organize under it and has acted as a corporation, it is a *de facto* corporation, and its *de jure* existence can be questioned only by the State. So also a party contracting with a corporation cannot defeat his obligation by showing that the corporation was never legally incorporated. 2 Cook on Corporations, sec. 637.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error, the Illinois Trust and Savings Bank, filed its bill May 17, 1897, in the circuit court of Cook county, against the Medinah Temple Company, a corporation, and its tenants occupying rooms and apartments in the Medinah Temple, to foreclose a trust deed executed March 1, 1894, by said Medinah Temple Company, pursuant to a resolution of its board of directors, to said Illinois Trust and Savings Bank, as trustee, conveying the said building and premises to secure bonds amounting to $400,000, with interest thereon. The Medinah Temple Company was defaulted and made no defense to the suit. All of the tenants were also defaulted, except the Ancient Arabic Order Nobles of the Mystic Shrine, which answered and filed a cross-bill claiming rights superior to the lien of the trust deed. The cross-bill was answered, and the cause was referred to a mas-

ter in chancery to take the evidence and report the same, with his conclusions. The master proceeded on November 20, 1897, to take the evidence, and the hearing before him continued from time to time thereafter until it was completed. He filed his report November 24, 1900, finding against the Ancient Arabic Order Nobles of the Mystic Shrine, and finding that there was due upon the bonds secured by the trust deed, for principal and interest, $565,641.63. He recommended the court to grant the relief prayed for in the original bill. There were objections and exceptions to the report, and while they were pending the plaintiffs in error, Severt T. Gunderson and forty-six others, stockholders of the Medinah Temple Company, presented to the court, on May 16, 1901, their intervening petition and asked leave to file it. By the petition they charged the directors of the Medinah Temple Company with frauds and prayed that they might be made parties defendant; that the petition should be considered in the nature of a cross-bill and said directors should be made defendants thereto; that the petitioners should be decreed to be the only legal stockholders of the corporation, and that the court should cancel the trust deed and dismiss the foreclosure proceedings. The court refused leave to file the petition, and the petitioners excepted and sued out a writ of error from the Appellate Court for the First District. The record being brought into the Appellate Court for review, that court found no error in it and affirmed the order of the circuit court. The writ in this case was then sued out to review the judgment of the Appellate Court.

It is agreed by counsel that the stockholders of a corporation are not necessary parties to a foreclosure suit against the corporation, and that they can only intervene in its behalf by showing the existence of a defense which the corporation neglects and refuses to make. There is no doubt that stockholders suing in behalf of themselves and the other stockholders, for the benefit

of the corporation, may bring their suit in equity to redress wrongs arising from the frauds, *ultra vires* acts or negligence of boards of directors, where the corporation is unable or unwilling to institute the suit, either because it is under the control of the guilty parties or otherwise. (Cook on Stock and Stockholders, sec. 645.)   It is also the right of stockholders to intervene and make a defense which the corporation ought to have set up against an illegal claim, where the defense is not made on account of the fraud and collusion of the directors with the complainants in the suit.   (Cook on Stock and Stockholders, sec. 659.)   Of the various ways by which the assets of corporations are appropriated and the stockholders are defrauded of their legal rights, one of the most frequent is the mortgage on the corporate property and its foreclosure.   It is the oldest and most common device of unscrupulous corporate officers to defraud the corporation and its stockholders, and the mortgage is generally expected to appear and be followed by a foreclosure, as a prelude to re-organization.   Upon a showing that a fraud is being practiced by that method, it is the duty of a court of equity to permit stockholders to intervene on behalf of themselves and the other stockholders, and set up the defense that the corporation and its officers were in duty bound to make.   The question in this case is as to the sufficiency of the facts alleged in the petition to show a defense to the foreclosure suit and to entitle the stockholders to appear and defend. In determining that question the facts alleged in the petition must be assumed to be true and capable of being proved.

The material statements of fact contained in the petition are as follows:   That in the spring of 1892 John A. May, William A. Stiles, George W. Powell, Frank M. Luce, William M. Knight and Chester T. Drake combined with the object of securing the erection of a home for the Shrine, a mystic organization known as the Ancient

Arabic Order Nobles of the Mystic Shrine, and made application to the Secretary of State for a license to open books of subscription to the capital stock of the Medinah Temple Company, a corporation to be organized for that purpose; that such capital stock was fixed at $500,000, and a license to open books was granted to the said parties, who were designated as commissioners; that 11,168 shares were subscribed for, amounting to $116,800; that in addition thereto said May, Stiles, Powell and Luce each subscribed for 458 shares and John Eason subscribed for 2000 shares; that said parties so subscribing for said additional shares were wholly unable to pay the amount subscribed or any material portion thereof, and had no intention of doing so; that the subscribers for capital stock were convened, and by means of the fictitious subscriptions said May, Stiles, Powell and Luce were elected directors, together with Albert M. Eddy, John R. True and Canute R. Matson; that May was elected president, Powell vice-president, Stiles secretary and Luce treasurer; that the commissioners made their report to the Secretary of State, who issued to them a certificate of the organization of the corporation on August 25, 1892; that when the certificate was received the board held a meeting on August 29, 1892, at which May, Stiles, Powell and Luce surrendered the stock subscribed by them, alleging their utter inability to pay for the same and that they had subscribed merely for the purpose of organization, and John Eason afterward surrendered his stock, and all said subscriptions were canceled; that said board of directors entered into contracts for the construction of the building and proceeded to collect the *bona fide* subscriptions to the capital stock; that in February, 1894, the walls of the building had been erected as high as the tenth story, and the *bona fide* subscriptions had been consumed and the contractors only partially paid; that at a meeting of the board of directors on February 15, 1894, May, as president, reported that the company was en-

tirely without means of completing the building, and the resolution authorizing the bonds and trust deed was passed; that the trust deed and bonds were executed, and the payment of the *bona fide* subscriptions furnished the only security for the bonds; that the bonds were taken by contractors and persons supplying material, for less than par, and in most cases for less than fifty cents on the dollar, in addition to receiving large bonuses of capital stock never paid for, amounting to more than $225,000 at par value; that Samuel I. Pope, George M. Moulton, Adrian Vanderkloot, Robert S. Halderman, John R. True and Minard L. Beers, who participated in the scheme, were elected directors by means of the bonus stock, and that the directors had entire charge and control of the company's assets, amounting to a large sum, and made no provision to pay interest on the bonds.

These are the allegations of fact contained in the petition, and in addition there are general charges which cannot be regarded as statements of fact, to the effect that there was a scheme to purchase the bonds at a low figure, for cash, and obtain control of the corporation by means of the bonus stock given without charge to the holders of the bonds; that the directors agreed with capitalists that they should supply the building at such high rates as to obtain great profits, and that petitioners are informed and believe that capitalists and speculators in the combination are the owners of nearly all the bonds and bonus stock, although the bonds, in many instances, were left in the hands of original owners for better concealment of a fraudulent scheme. The petition contains general charges of an attempt on the part of the officers to bring about a foreclosure, and that they are in reality allies and confederates of the bondholders, and the corporation is characterized throughout as a pretended organization and the directors as pretended directors.

Section 18 of the act concerning corporations is as follows: "If any person or persons being, or pretending

to be, an officer or agent, or board of directors, of any stock corporation, or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act, before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation." (Hurd's Stat. 1899, p. 436.)

The petition alleges that in the organization of the Medinah Temple Company as a corporation the stock was not all subscribed in good faith, but that out of the capital stock of $500,000, subscriptions to the amount of $383,200 were fictitious, made by persons wholly unable to pay their subscriptions and for the mere purpose of organization, and that the same were surrendered after the certificate was obtained. The officers and board of directors assumed to exercise corporate powers and to use the name of the corporation before all the stock was subscribed in good faith, and these facts bring them within the provisions of said section. According to the petition they became liable, jointly and severally, for all the debts and liabilities made by them and contracted in the name of the corporation, and plaintiffs in error therefore contend that the trust deed could not be foreclosed against the property of the corporation. It is insisted that the remedy given by the statute is exclusive; that the Medinah Temple Company was a merely pretended corporation, without power to execute the bonds and trust deed, and that creditors must avail themselves of the remedies given by that section.

It seems to us that it is not the purpose of the statute to deal only with organizations which are not corporations for any purpose. If the Medinah Temple Company was not a corporate body it was a partnership of individuals independently of the statute, and the individuals

would be liable, as partners, for its debts. The section purports to deal both with corporations and pretended corporations, and the act in other sections imposes liabilities upon directors and officers, even where the corporation is regularly and legally organized. A corporation may be one *de facto*, although not completely organized in accordance with the provisions of the statute. (*Bushnell* v. *Consolidated Ice Machine Co.* 138 Ill. 67.) A corporation must be organized in compliance with the general law providing for its creation. There can be no corporation *de jure* without complying with the requirements of the statute, but if an association is in the exercise and use of corporate franchises under color of a legal organization, in pursuance of the general law, it is a corporation *de facto* as to third persons dealing with it, and subject to the same liabilities as a corporation regularly and legally organized. Section 27 of the act in question provides that a certified copy of the articles of incorporation shall be taken and received in all courts and places as *prima facie* evidence of the facts therein stated. The production of the certificate of the Secretary of State of the complete organization of the corporation, with a copy of the papers filed in his office, authenticated under his hand and the seal of State and recorded in the office of the recorder of deeds where the principal office of the company is located, is *prima facie* evidence of the existence of the corporation. The evidence which is sufficient in law to prove that the corporation is one in fact as well as in name and authorized to proceed to business, should be sufficient for the general public dealing with the corporation, and it would be unreasonable to say that its officers could not create a liability against it, or charge its property and assets, if it should appear, upon an investigation of its affairs, that some subscription to its capital stock was fraudulent and fictitious. The necessities of business, the protection of the general public and the requirements of justice would forbid a different

rule. If there is, in fact, no corporation, so that no liability can be created against it, the only liability is that of the individuals as partners; but it would be imposing an unreasonable burden upon contractors not chargeable with any notice of the internal affairs of a corporation, to require them to make an investigation, and at their own hazard decide whether any of the subscriptions to the capital stock were made in bad faith. There is no claim in the petition that the steps required by the statute were not apparently taken, but the charge was that a wrong was committed in the fraudulent subscription for stock. The facts stated in the petition are such as to create a personal liability against those who engaged in the fraudulent organization, but it does not follow that the corporation was not one *de facto*, or that the contractors who dealt with it and took its bonds have no other remedy than the personal liability of the officers. There may be a liability of both. A creditor is not estopped, by dealing with a corporation *de facto*, from asserting liability of the officers on the ground that the statute was not complied with. The fact that he has dealt with the corporation, or that he files a claim against it, does not act as an estoppel to charge the directors with the debts, (*Loverin* v. *McLaughlin*, 161 Ill. 417,) and the mere existence of a liability against the directors certainly would not destroy a right against the *de facto* corporation. The fact that there was such personal liability would not constitute a defense to the foreclosure suit, and was not ground for permitting the intervention of stockholders.

It is not claimed that the issuing of bonds, and making the trust deed to secure them, was beyond the scope of the powers of the corporation or the business which it was organized to transact. The act was not *ultra vires* the corporation, if the contractors had a right to deal with it as a corporation. The question is not whether the *bona fide* subscribers can have a remedy against offi-

cers and directors who perpetrated a fraud, but whether the bonds and trust deed can be enforced as a corporate obligation.

The averments of the petition relate almost wholly to frauds of the officers in giving away capital stock as a bonus with the bonds and by fraudulent schemes securing control of the corporation and its assets, but those allegations have nothing to do with the validity of the bonds or the trust deed. They are frauds which, if proved, would entitle the petitioners to relief in a suit instituted for the purpose against those guilty of the wrongs, but they have no connection with the foreclosure of the mortgage. The only thing alleged against the holders of the bonds is not even in the form of a statement of fact, but consists of a general charge that the directors agreed with capitalists that they should supply the building with materials at such high rates as to make large profits, and that the bonds were received by contractors at a large discount. The petition names no contractor or bondholder and gives no facts, and does not aver that the bonds were sold at less than their actual value. The averments that the capitalists and speculators are now the owners of the bonds are in like manner made as a general charge and only on information and belief. The petition is insufficient to show any valid defense to the foreclosure suit. Whatever rights the petitioners may have against the parties charged with the frauds set forth in the petition, we are satisfied the court was right in refusing to allow them to intervene and defend for the corporation in the foreclosure suit.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*