ATTORNEY GENERAL, *ex rel.* CITY OF MONROE, *v.* TOLEDO & MONROE RAILWAY.[1]

STREET RAILROADS—FRANCHISES—FORFEITURE—GROUNDS.

The facts that a railroad company, organized under the general railroad act, operating under franchises granted by a city to street-railroad companies whose rights it has acquired, carries freight without authority, charges excessive fares, and obstructs the streets of the city, are not ground for the forfeiture of the franchises, but furnish occasion for the regulation of the business done by the corporation.

Error to Wayne; Donovan, J. Submitted October 10, 1907. (Docket No. 31.) Decided March 17, 1908.

Quo warranto proceedings by John E. Bird, attorney general, on the relation of the city of Monroe, against the Toledo & Monroe Railway, the Monroe Traction Company, and the Detroit, Monroe & Toledo Short Line Railway for the forfeiture of certain franchises. There was judgment dismissing the petition, and petitioner brings error. Affirmed.

*John E. Bird*, Attorney General, *Willis Baldwin*, and *E. R. Gilday*, for appellant.

*C. A. Golden (John C. Donnelly*, of counsel), for appellees.

MOORE, J. This is a quo warranto proceeding. Some information will be afforded in relation to the questions involved by a reference to the opinions in *Ilgenfritz* v. *Railway*, 136 Mich. 634, and *City of Monroe* v. *Railway*, 143 Mich. 315. By the writ of quo warranto the relator seeks to quash the charter of the Monroe Traction Company and to oust the other two defendants from taking, holding, or operating the street-railway franchise

_____

[1] Rehearing pending.

granted by the city of Monroe to the Monroe Traction Company. The claim of the relator is summarized in the brief of counsel. It is claimed defendants have violated State law and policy; we quote:

"1st. The Monroe Traction Co. perpetrated a fraud upon the State and the people by its fictitious incorporation.

"2d. The Monroe Traction Co. has been and is guilty of nonuser.

"These acts, being negative, cannot be reached by injunction.

"The general railroad companies have been guilty of the following violations of State law and policy:

"1st. They have taken, direct to themselves, a street-railway franchise on Monroe and Anderson streets.

"2d. They have taken an assignment of a street-railway franchise on Elm street.

"3d. They are operating a street-railway system through the streets of Monroe.

"4th. They claim the right, and exercise it, of doing a general freight business through the streets of Monroe in operating a street railway.

"5th. They are charging fares which are excessive under their incorporation and the State law.

"The first three of these violations cannot be reached by injunction; this court has already decided that. The last two violations might be reached either by information or by injunction, under the principles of the cases above cited."

Before determining whether the above contention is well founded, it will be necessary to learn more of the situation than is obtained by reading the opinions in the cases to which reference has heretofore been made.

In September, 1899, the city of Monroe granted to Clarence A. Black and his associates, who were to organize a corporation, a street-railway franchise with the right to—

"Construct, equip, own, maintain, and operate a street railway for the conveyance of persons, property, and merchandise (as far as this city has a legal right to grant said authority), with all the necessary and convenient tracks, sidetracks, switches, turntables, turnouts, and

connections, and to erect and maintain all arms, poles, wires, and other equipment necessary to operate such railways during the period hereinafter provided, in, upon, and through the following streets in the city of Monroe."

The grant specified among others along and through Monroe street, and across the bridge on the River Raisin to Anderson street and through Anderson street to the northerly city limits. Mr. Black and his associates immediately organized the Toledo & Monroe Railway under the general railway act and constructed and put the line in operation to Toledo. The power house was constructed at the intersection of Anderson and Elm avenue near the northerly end of the bridge. In 1900 a separate grant was made to Mr. Black and associates, to be organized into a corporation, with the right to construct a road on Elm avenue to its easterly terminus and then on private right of way to the Lake Shore to be connected with the road on Monroe and Anderson streets so that through cars could be operated to the Lake Shore. Mr. Black and his associates organized the Monroe Traction Company under the train railway act, for the purpose of constructing this Elm street route; the connection was made and through cars were put in operation, the Monroe Traction Company leasing its tracks to the Lake Shore to the Toledo & Monroe Railway. Subsequently the city of Monroe and the Toledo & Monroe Railway and the Monroe Traction Company got into a controversy as to the failure of the Toledo & Monroe Railway to build certain branch lines in the city of Monroe, and because thereof the city of Monroe attempted to and did formally pass an ordinance repealing the two ordinances above named. This controversy was settled, and as part of the settlement the common council of the city of Monroe, on the 22d day of September, 1902, and after the roads had been constructed and in operation for nearly two years, re-enacted both ordinances and regranted directly to the Toledo & Monroe Railway Company the rights on Monroe street, and Anderson street and the bridge, and to the Monroe Traction

Company the rights upon Elm avenue, without any change whatever in the rights, powers, privileges, and franchises that had been granted in the original ordinances as to their extent and character, and still required the connection to be continued between the two lines and the operation of through cars. For these regrants the city received as part consideration the sum of $5,000 in cash. The Detroit, Monroe & Toledo Short Line Railway Company afterwards acquired the rights of the other two defendants. The record discloses that the property owners whose land abuts upon the street have executed releases and have consented to the construction and operation of these lines on the streets of Monroe.

The general railway act, from which the Toledo & Monroe Railway Company and the Detroit, Monroe & Toledo Short Line Railway Company obtain their powers (2 Comp. Laws, § 6234, subd. 5), reads in part as follows:

"To construct its road upon or across, or its railroad tunnel under any stream of water, watercourse, private road, street, lane, alley, or highway, and across or under any plank road, railroad, or canal, which the route of its road or railroad tunnel shall lie along, or intersect; * * * and in case of the construction of such railway upon any public street, lane, alley, or highway, the same shall be on such terms and conditions as shall be agreed upon between the railroad company and the common council of any city, or the village board of any village, or the commissioners of highway of any township in which the same may be; but such railway shall not be constructed upon any public street, lane, alley, highway, or private way until damages and compensation be made by the railroad company therefor to the owner or owners of property adjoining such street, lane, alley, highway, or private way, and opposite where such railroad is to be constructed either by agreement between the railroad company and each owner or owners, or ascertain as herein prescribed for obtaining property or franchises for the purpose of its incorporation to be paid to the owner thereof, or deposited as hereinafter directed."

Subdivision 7 has the following:

"To take, transport, carry, and convey persons and

property on their said road or through such tunnel by the force and power of steam, animals, or any mechanical power, or by any combination of them, and to receive tolls and compensation therefor."

These provisions of the statute would seem to authorize a railway company organized under it to operate its road upon the streets of Monroe, if it obtains the consent of the common council and of the abutting property owners. The common council did consent, and adopted municipal ordinances containing in detail the conditions and terms upon which said road should be operated. It appears clear from the record that by the terms of the ordinance the parties have agreed that a local passenger business in the nature of a street-railway business may be done, and that the rate of fare shall be not to exceed five cents for a ride of any distance on the routes named within the city limits; that both parties to the agreements contained in the grants understood and expressly stated their understanding to be that the railways within the limits of the city of Monroe were to be an integral portion or part of the line of railway extending northerly to the city of Detroit; southerly to the city of Toledo, and by express agreement agreed to and fixed the rate of fare chargeable for passengers taking passage in the city of Monroe to both of the above points. The parties have acted upon these agreements. The city has received a large sum of money. The defendants have made large expenditures. The roads have been built substantially as provided for by the ordinances. They are in operation.

Defendants claim they are now observing all the terms of the ordinances; that any failure to do so at the beginning was only temporary and not the fault of defendants. The only possible ground for complaint is that freight is carried which is not authorized; that excessive fare is charged, and that the streets are obstructed. The defendant the Detroit, Monroe & Short Line Railway Company denies that this is so. Conceding that it may be true, we think it not a cause for the forfeiture of the franchises,

but an occasion for the regulation of the business done by the corporation. *People, ex rel. Maybury*, v. *Gas-Light Co.*, 38 Mich. 154; *People, ex rel. Kunze*, v. *Railway Co.*, 92 Mich. 524 (16 L. R. A. 752); *Attorney General* v. *Railway Co.*, 96 Mich. 65.

Judgment is affirmed.

GRANT, C. J., and MONTGOMERY, CARPENTER, and MCALVAY, JJ., concurred.