R. D. CROW et al., Appellees, v. BOND & MORTGAGE COMPANY OF IOWA, Appellant.

**CORPORATIONS:** Receivers—Right of Minority Stockholders. A receiver may, in an action by *minority* stockholders, very properly be appointed for a *solvent* corporation which is no longer a going concern, and is in process of liquidation, on a showing that the management is inefficient, negligent, and fraudulent, to the manifest detriment of the plaintiffs. (See Book of Anno., Vol. 1, Sec. 8402, Sec. 12713, Anno. 22 *et seq.*)

**JUDGMENT:** Conclusiveness—Matters Subsequent to Decree. A judgment is not *res adjudicata* of matters subsequent thereto. (See Book of Anno., Vol. 1, Sec. 11567, Anno. 76 *et seq.*)

Headnote 1: 14a C. J. pp. 953, 971. Headnote 2: 34 C. J. p. 935.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

JUNE 21, 1926.

Action in equity for the appointment of a receiver for a corporation. The opinion states the facts. From a decree for the plaintiffs and the intervener, the defendant corporation appeals.—*Affirmed.*

*Guy A. Miller* and *Clinton L. Nourse,* for appellant.

*Parsons & Mills* and *Volney Diltz,* for appellees.

VERMILION, J.—The defendant corporation was organized in 1918, for the purpose of dealing in stocks, bonds, mortgages, and commercial paper. It has an outstanding capital stock of $228,000. The plaintiffs and the intervener are minority stockholders. The action, in which the intervener joins the plaintiffs, was brought to secure the appointment of a receiver for the corporation. The

1. CORPORATIONS: receivers: right of minority stockholders.

relief prayed was granted, and the propriety of this decree is the only question presented on appeal.

I.   Certain facts are not in dispute.   It thus appears that, for some years prior to and at the time of the commencement of this action, C. H. Johnson was president of the corporation and in active management of its operations.   P. E. Taylor had been employed as a bookkeeper by the corporation for five years prior to 1923, when he was elected a director.   The petition in this action was filed June 15, 1925.   On July 29, 1925, at a meeting of the board of directors, attended by Johnson, Taylor, and two others out of the six directors, Johnson resigned as president, and his resignation was accepted; and a resolution was adopted, to the effect that all of the physical assets of the corporation should be placed in the hands of Taylor, who should act as custodian and trustee for the board of directors.   The resolution provided that the trustee should immediately take such steps as in his judgment might be best, to place the assets in liquid form, and enter into negotiations for the sale of the real, estate; and the officers of the company were directed to turn over the assets to such trustee, and do all things necessary to carry out the terms of the resolution.   These facts were alleged in an amendment to the petition.

In October, 1923, the board of directors had passed a resolution authorizing the president to "administer" the company's assets under the direction of the board, with the view of getting them in a more liquid form and collecting what was due the company, directing the reduction of expenses, and discontinuing the company's office.   Since then, the corporation has been inactive, so far as new business was concerned.   Notwithstanding this, its expenses have continued to largely exceed its income, the deficit in 1923 being $5,508.60, and in 1924, $3,058.28; and its cash resources have shrunk from $9,789.87, in 1923, to $2,832.08 at the time of the trial.   Johnson, up to the time of his resignation, was drawing a salary of $200 per month.   No dividend has been paid on the stock since 1920.   There has been no meeting of the stockholders since April, 1923.

The testimony showed that among the assets of the corporation there were notes to the amount of $148,598 that were worthless, and numerous other items of little or no value.   The total value of its assets at the time of the trial was not over $50,000.

The corporation is not insolvent in the sense that it is unable to pay its debts. The debts are inconsiderable, and the rights of creditors are not involved. It is, however, perfectly apparent that its capital, as represented by its stock, has been very largely dissipated.

A great part of the business of the corporation during the days of its seeming prosperity was the buying of notes from the Gibford Chemical Company. As these notes matured, it had been the practice for Gibford, or the Gibford Chemical Company, to take up such as were not paid by the makers.

The principal complaint made by the plaintiffs of the management of the corporation by Johnson, although not the only one, is that, on May 24, 1923, Gibford brought to the office of the Bond & Mortgage Company, and turned over to its officers, certificates of deposit in the sum of about $20,000, for the purpose of taking up notes sold by the chemical company to the mortgage company, maturing June 1, 1923; and that Johnson, instead of so applying the certificates, used them to take up notes that he, certain of his friends, and another corporation in which he was interested, had bought of the chemical company.

Without discussing in detail the evidence relating to this transaction, we have to say that we think it sustains the charge so made. That this was a gross fraud on the corporation, perpetrated by its chief executive officer, goes without saying. The evidence also sustains other charges of mismanagement on the part of Johnson, and of neglect of duty on the part of the directors, who maintained him in control of the affairs of the corporation. In 1923, at the time of the last stockholders' meeting, there was a written demand on the board of directors by certain of the stockholders that Johnson and Taylor be removed from office. Various acts of misconduct by Johnson were alleged, and it was charged that the funds of the corporation had been diverted. The demand was ignored, and no effort by the directors, or by Taylor, since his resignation as trustee, has ever been made to call Johnson to account; but he remained in charge of the corporation's affairs until his resignation, after this suit was commenced. The directors at that time turned the assets over to Taylor, and clothed, or attempted to clothe, him with authority to take such steps as in his judgment seemed best, to reduce the assets to cash. It is true, Johnson, although still a director, was

not, at the time of the trial, actively participating in the management of the corporation. But his retirement under such circumstances, and the action of the directors in practically, and without the authority of the stockholders, surrendering their proper function to Taylor, would appear to be more in the nature of a confession than a correction of wrongdoing, and to justify a proper interference by the court, rather than to deprive the stockholders of any available remedy.

Although the corporation since 1923 has confessedly been in process of liquidation, nothing appears to have been accomplished in that direction save the collection of $14,000 due on mortgages held by it. No attempt, either before or since Taylor's assumption of control, has been made to enforce collection of other doubtful or even unquestioned past-due obligations. The corporation has property sold on installment contracts. No payments have been made on these since December, 1924, although the purchasers were still in possession of the property. The expenses have constantly and largely exceeded the income, and the cash has continually diminished.

The relief sought was not the dissolution of the corporation and the winding up of its affairs. The latter had been resolved upon by the action of the board, and was under way. The corporation had already, by voluntary action of its board, ceased to function, as such, for all purposes save the winding up of its affairs, and that had been intrusted to Taylor. The appointment of the receiver deprived the corporation of nothing it had not already relinquished.

We have frequently upheld the right of the holders of a majority of the stock to control the property and manage the affairs of a corporation, and, in the absence of fraud, or such a misuse of corporate funds as could not be corrected by action against the officers, have denied to a minority stockholder the right to a decree dissolving a going, solvent corporation and appointing a receiver. See *First Nat. Bank v. Fireproof S. B. Co.,* 199 Iowa 1285, and cases cited. These cases are, however, not controlling where it is admitted that the corporation has ceased to function, save to wind up its affairs, and fraud, malfeasance, or such neglect of duty as will result in impairment of assets is shown. Nor is the fact that the corporation has sufficient assets to pay its debts conclusive against the right of a

minority stockholder to the protection of his interest in the property on liquidation. The stockholder has an ultimate interest in the property of the corporation in such case which is great in proportion as the indebtedness is small.

The only effect of the appointment of the receiver here was to take the property of the corporation and the winding up of its affairs out of the hands of those under whose mismanagement its present state was brought about, and who had failed to take even the most obvious steps in prosecuting the work of conserving and liquidating its assets, and to intrust that duty to an officer of the court. That the interests of the plaintiffs and the intervener in the property of the corporation were in danger of being lost or impaired under the course followed by Johnson, the directors, and Taylor, can hardly be doubted. Section 12713, Code of 1924.

By Section 8402, Code of 1924, providing for the appointment of a receiver for a corporation on the application of the attorney-general in the name of the state, the existing rights of stockholders to institute such proceedings are expressly reserved to them. *Platner v. Kirby*, 138 Iowa 259; *First Nat. Bank v. Fireproof S. B. Co.*, supra.

In *French v. Gifford*, 30 Iowa 148, we said that equity would afford a stockholder relief from the malfeasance of those intrusted with the management of the corporate business. In *Dickerson v. Cass County Bank*, 95 Iowa 392, we approved the appointment of a receiver for an incorporated bank at the suit of a stockholder, where the officers were guilty of malfeasance in allowing its assets to become of such a character and so scattered that they could not be realized on without sacrifice.

We are of the opinion that the appointment of the receiver was fully warranted by the facts and sustained by authority.

II. There was a plea of *res judicata* based upon a decree in a former action where, in connection with a suit upon a note, a receiver was asked for the Bond & Mortgage Company. The plaintiffs here intervened in that action and joined in the prayer for a receiver. The petition of intervention was dismissed. The petition in that action was filed in August, 1922, and decree entered in October, 1922. There was clearly no adjudication of the right

2. JUDGMENT: conclusiveness: matters subsequent to decree.

to a receiver based upon transactions occurring subsequent to the entering of the former decree.

The decree is—*Affirmed.*

DE GRAFF, C. J., and STEVENS and FAVILLE, JJ., concur.