B. KOSMAN et al., Plaintiffs, v. LESTER L. THOMPSON, Judge. Defendant.

**CORPORATIONS:** Dissolution—Optional Remedies. The general assembly has plenary power to provide for the dissolution of a corporation either by an action in equity or by the law action of quo warranto; and when the state demands the total ouster of the corporation and adopts the equitable action, it may base such action on any ground or grounds which would have been available to it, had it proceeded by quo warranto.

**CORPORATIONS:** Dissolution—"Corporation" Defined. The filing with the secretary of state of articles of incorporation and the issuance and delivery by said official of a certificate of incorporation create a corporation, within the meaning of the statute (Sec. 8402, Code of 1924) which authorizes the dissolution of a "corporation" by an equitable action; and this is true regardless of the secret intentions of the incorporators.

**VENUE:** Nonresident—Non-waiver of Right. The act of a defendant who is sued in a county other than that of his residence in appearing generally, filing motions, and proceeding to trial on preliminary matters, does not work a waiver of his right to a change of place of trial to the county of his residence when the application for such change is made *before* answer.

**CORPORATIONS:** Dissolution—Assessment on Stockholders—Non-right to Change of Venue. Stockholders in an insolvent corporation which is in process of liquidation under receivership are not entitled to a

change of place of trial from the forum of the receivership to the county of their residence on the narrow issue whether an assessment on unpaid stock subscriptions is necessary.

VENUE: Action on Unpaid Corporate Stock Subscriptions. Parties sued jointly by a receiver, in an equitable action to dissolve and liquidate a corporation, for separate personal judgments on separate stock subscriptions, are entitled to a change of place of trial from the forum of the receivership to the counties of their respective residences and to a trial at law; and this is true irrespective of any doctrine (1) of the avoidance of multiplicity of suits, (2) of retention by equity of an action over which it has acquired jurisdiction, or (3) of the so-called trust-fund doctrine.

Headnote 1: 14a C. J. pp. 1088, 1089, 1134; 32 Cyc. p. 1427. Headnote 2: 14 C. J. pp. 177, 178; 14a C. J. p. 1088. Headnote 3: 40 Cyc. pp. 125, 148. Headnote 4: 14a C. J. p. 1135. Headnote 5: 40 Cyc. p. 96.

Headnote 1: 7 R. C. L. 703.

*Certiorari to Polk District Court.*—LESTER L. THOMPSON, Judge.

JANUARY 11, 1927.

OPINION ON REHEARING SEPTEMBER 20, 1927.

REHEARING DENIED DECEMBER 17, 1927.

Original action in certiorari, to review numerous rulings of the district court in proceedings relating to and growing out of the dissolution and receivership of the Associated Packing Company.—*Writ allowed in part; annulled in part.*

O. M. Brockett, S. G. Van Auken, M. A. Roberts, and S. W. Livingston, for plaintiffs.

Parrish, Cohen, Guthrie, Watters & Halloran, Charles Hutchinson, and Bradshaw, Schenk & Fowler, for defendant.

KINDIG, J.—The Associated Packing Company, on October 10, 1918, filed articles of incorporation with the secretary of state, providing for an authorized capital of two million dollars, and accordingly, said state official issued in return a certificate of incorporation. By amendment to said original articles, the capital stock

1. CORPORATIONS: dissolution: optional remedies.

was increased, on March 28, 1919, to five million dollars. Afterward, under such certificate, the company employed a large number of agents and other representatives, acquired considerable real estate, did business with many Iowa banks, entered into contractual relationships with a multitude of Iowa citizens, and assembled (including its stock subscription notes) resources of a value in excess of three million dollars.

During February, 1920, the attorney-general instituted an action in equity in the district court of Polk County in the name of the state, praying for the dissolution of the corporation and the appointment of a receiver to wind up its business, and alleging: (1) Violations of statutes; (2) fraud practiced by the promoters upon the state in the application for the charter; (3) conspiracy between the officers of the Associated Packing Company and those of the Associated Finance Company, an incorporated fiscal agent of the packing company; and (4) other irregularities. Trial was had, resulting in a decree as asked. Upon qualification, the receiver took charge of the assets. Claims were filed by numerous creditors, including the Linden Bank, the amount of the latter demand being $216,751.10. Total indebtedness of the institution is such that the assets outside of unpaid stock subscriptions are insufficient to pay corporate obligations.

Finally, February 28, 1925, upon application of the Linden Bank, the district court ordered and directed the receiver to commence an action in equity in Polk County against all subscribers to capital stock who had not then paid their subscriptions in full: (1) To assess such "subscribers" in an amount sufficient to pay all claims established against the corporation, together with the expense of administration, and (2) to recover judgment on said assessment. Obediently, on April 23, 1925, the receiver commenced such action in equity in said county against more than 800 alleged subscribers, demanding: (1) An assessment for 17½ per cent, or for such other percentage as may be necessary, in order to pay the indebtedness, and (2) judgment against each of said subscribers for the amount of the assessment so fixed.

I. At the threshold it is urged that the district court is without, and acting beyond, its jurisdiction in the premises, for the reason that said proceedings instituted by the attorney-general for dissolution were equitable in nature, under Section 8402

of Code of 1924, and not in law, under the provisions of Section 12428 and supplemental paragraphs of said Code. Said first Code reference reads:

"Courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, and to appoint a receiver therefor, * * * An action therefor may be instituted by the attorney-general in the name of the state, reserving, however, to the stockholders and creditors all rights now possessed by them."

A determination of this controversy involves an interpretation of said sections, as well as the establishment of their relationship to each other, and an exposition of their uses to the state and the individual litigant. No impediment is confronted in this task because of the sacredness of said law proceeding afforded by constitutional protection. Unhampered, therefore, the legislature was free to enact such remedies for the occasion by it deemed wise and convenient.

Quo warranto, actions in the nature of quo warranto, remedies provided by said Section 12428 and kindred laws, may be entirely abdicated, and substitutions made in place thereof. *State ex rel. Cates v. Standard Oil Co.,* 120 Tenn. 86 (110 S. W. 565) ; *Ames v. State, ex rel. Johnston,* 111 U. S. 449 (28 L. Ed. 482) ; *Louisville & N. R. Co. v. State ex rel. Gray,* 154 Ala. 156 (45 So. 296); *State v. Atchison, T. & S. F. R. Co.,* 176 Mo. 687 (75 S. W. 776) ; *State v. McLain,* 58 Ohio St. 313 (50 N. E. 907) ; *State v. Evans,* 33 S. C. 612 (12 S. E. 816) ; *Wright v. Lee,* 4 S. D. 237 (55 N. W. 931).

Since governments have been formed, some men have been inclined to encroach upon the prerogative of the sovereign or state. To prevent this, and maintain governmental power and order, a remedy has been found necessary, to prevent infringement. Law alone need not be selected for protection in this regard, and there is no prevention of the state's calling to its rescue the elasticity and emergency-usefulness of equitable proceedings. *Platner v. Kirby,* 138 Iowa 259; *State v. Fidelity L. & Tr. Co.,* 113 Iowa 439; *State ex rel. Mullan v. Syndicate Land Co.,* 142 Iowa 22; *Chicago Mut. Life. Ind. Assn. v. Hunt,* 127 Ill. 257 (20 N. E. 55). Evolution has tended to produce broader and more easily manipulated laws for the purposes here under con-

sideration: *Ames v. State ex rel. Johnston, State ex rel. Cates v. Standard Oil Co.,* supra.

As a historical investigation will reveal, at common law there were two modes to ascertain or enforce the forfeiture of a charter of a corporation for misuser or nonuser. The one was by *scire facias,* where there was a legal existing body, capable of acting, which abused its power. The other was by quo warranto, or an information in the nature of a quo warranto, and applied where there was a body corporate *de facto* only, exercising a franchise without authority, or an association assuming to act as a corporation, without even color of right. 14a Corpus Juris 1134, Section 3768. Little is known of the origin of quo warranto, its history being obscured in antiquity. It was used at least as early as Richard I. *State ex rel. Dunlap v. Stewart,* 6 Houst. (Del.) 359. Recitation of its future development and change is interestingly made in *State ex rel. Cates v. Standard Oil Co.* and *Ames v. State ex rel. Johnston,* supra.

Events in this state leading up to the legislation in question have been well catalogued by Mr. Justice McClain in *Platner v. Kirby,* supra, wherein he concludes as to what is now Section 8402, as follows:

"The legislative intent seems to have been to authorize what was not previously authorized with reference to corporations in general, an action in equity by the attorney-general, in the name of the state and in the interests of the public, to dissolve a corporation on account of violation by it of the laws of the state, and to leave to the stockholder such remedy as he already had."

Support for this pronouncement is furnished by the statements and holdings in *State v. Fidelity L. & Tr. Co., State ex rel. Mullan v. Syndicate Land Co.,* supra, *Crow v. Bond & Mtg. Co.,* 202 Iowa 38.

The state, in its province as a sovereignty, had a right to choose between the procedure afforded for its convenience and protection by said sections, and adopt the one most to its liking. Plaintiffs cannot complain. These sections were not provided for their use, and the effect on them is incidental only. *Wallace v. Pierce-Wallace Pub. Co.,* 101 Iowa 313, *Platner v. Kirby, Crow v. Bond & Mtg. Co.,* supra. Manifestly, it is quite immaterial to the state whether the business of the corporation be wound up by three trustees or one receiver. Prejudice to the plaintiffs, if

any, in either event is not controlling, when compared with the rights and liberties of all the people who constitute and are the state. Such action in equity on the part of the state does not deprive plaintiffs of any right belonging to them. Said Section 8402 expressly reserves to them such "rights" as similar litigants enjoyed at the time of the legislative enactment. *Platner v. Kirby*, supra. For enlightenment as to what these individual "rights" were, reference is made to *French v. Gifford*, 30 Iowa 148; *Dickerson v. Cass County Bank*, 95 Iowa 392; *Crow v. Bond & Mtg. Co.*, supra.

Argument is advanced that, because the law action affords the relief of ouster, while the equitable process accomplishes dissolution, the action in the case at bar must have been under said Section 12428. This contention does not receive our approval. Under the proceedings in the nature of quo warranto there are two forms of ouster: total, Section 12428, and partial, Section 12429. See, also, *State v. Capital City Dairy Co.*, 62 Ohio St. 350 (57 N. E. 62) ; *State ex rel. Barrett v. First Nat. Bank*, 297 Mo. 397 (249 S. W. 619) ; *Attorney-general ex rel. City v. Toledo & M. Railway*, 151 Mich. 473 (115 N. W. 422). Total "ouster" necessarily results in death of the corporation. The being suffocates for want of prerogative breath. On the other hand, "dissolution," under Section 8402, accomplishes the same result. There, demise is caused by direct sentence. *State v. Fidelity L. & Tr. Co.*, supra. For the general law, see *Farish v. Cieneguita Copper Co.*, 12 Ariz. 235 (100 Pac. 781) ; *Imperial Film Exch. v. General Film Co.*, 244 Fed. 985; *Matthews v. Bank of Allendale*, 60 S. C. 183 (38 S. E. 437) ; *Lyons-Thomas Hdw. Co. v. Perry Stove Mfg. Co.*, 86 Tex. 143 (24 S. W. 16) ; *Theis v. Spokane Falls Gas Light Co.*, 34 Wash. 23 (74 Pac. 1004).

In the event that liberty and sovereignty are in jeopardy, requiring for their salvation or security total destruction of the offending corporation, either method of extinguishment is available. One is concurrent with the other, when confined to the transgressing corporate status hereinafter defined, and within the limitations presently to be made. Decisions relating to public or quasi-public corporations are not in point. Different statutory provisions furnish a distinction.

"Good cause shown" (a prerequisite of said Section 8402)

for the basis of equity jurisdiction may include any or all violations and irregularities which give rise to the action at law, as well as others. *Platner v. Kirby,* supra; *State, v. Fidelity L. & Tr. Co.,* supra; *State ex rel. Mullan v. Syndicate Land Co.,* supra. If the ground for procedure under said law course justifies total ouster, the same facts would amount to "good cause" for equity. On the other hand, conditions warranting only partial ouster under said law channel will or will not furnish equity relief, as the situation may appear. *State v. Capital City Dairy Co., State ex rel. Barrett v. First Nat. Bank, Attorney-general ex rel. City v. Toledo & M. Railway,* supra.

Primarily, it is contended that said "corporate status" of the Associated Packing Company was not that of a corporation *de jure* or *de facto,* and consequently Section 8402 cannot apply.

2. CORPORATIONS: dissolution: "corporation" defined. A corporation *de jure* is a legal entity which has a right to corporate existence and to exercise corporate powers of which it cannot be deprived even by the state in a direct assault contrary to the terms of its charter. *Floyd v. State ex rel. Baker,* 177 Ala. 169 (59 So. 280); *Brown v. Atlanta R. & P. Co.,* 113 Ga. 462 (39 S. E. 71); *International Harv. Co. v. Eaton Circuit Judge,* 163 Mich. 55 (127 N. W. 695); *Capps & McCreary v. Hastings Pros. Co.,* 40 Neb. 470 (58 N. W. 956); *Alder Slope Ditch Co. v. Moonshine Ditch Co.,* 90 Ore. 385 (176 Pac. 593); *Board of Education v. Berry,* 62 W. Va. 433 (59 S. E. 169). On the other hand, a *de facto* corporation exists so that the legality of its subsistence cannot be attacked collaterally where: (1) There is a special act or general law under which such a corporation may lawfully live, (2) a bona-fide attempt to organize under the law in colorable compliance with the statutory requirements, and (3) actual user or exercise of corporate powers in pursuance of such law, and attempted organization. *Wood v. Staton,* 174 N. C. 245 (93 S. E. 790); *Gibbs's Estate, Hallstead's Appeal,* 157 Pa. St. 59 (27 Atl. 383); *Tulare Irr. Dist. v. Shepard,* 185 U. S. 1 (46 L. Ed. 773); *Alabama Fid. Mtg. & Bond Co. v. Dubberly,* 198 Ala. 545 (73 So. 911); *Vallejo & N. R. Co. v. Reed Orchard Co.,* 169 Cal. 545 (147 Pac. 238); *Duke v. Taylor,* 37 Fla. 64 (19 So. 172); *Brooke v. Day,* 129 Ga. 694 (59 S. E. 769); *Imperial Bldg. Co. v. Chicago Open Board of Trade,* 238 Ill. 100 (87 N. E. 167); *Jennings v. Dark,* 175 Ind. 332 (92 N. E. 778); *Newcomb-Endicott*

*Co. v. Fee,* 167 Mich. 574 (133 N. W. 540) ; *Healey v. Steele Center Cream. Assn.,* 115 Minn. 451 (133 N. W. 69) ; *Lusk v. Riggs,* 70 Neb. 713, 718 (102 N. W. 88) ; *Franke v. Mann,* 106 Wis. 118 (81 N. W. 1014) ; *Kwapil v. Bell Tower Co.,* 55 Wash. 583 (104 Pac. 824). See, also, *Troutman v. Council Bluffs St. Fair & C. Co.,* 142 Iowa 140; *Nelson v. Consolidated Ind. Sch. Dist.,* 181 Iowa 424.

Books disclose judicial pronouncement to the effect that, where the provisions of the statute have been in form complied with, and a charter, or certificate of incorporation, which is made the evidence of due incorporation, has been duly granted by a court or officer, under the statute, *de facto* existence of the corporation cannot be attacked collaterally for fraud or bad faith in obtaining the charter or certificate or in organizing thereunder. *Cason v. State,* 16 Ga. App. 820 (86 S. E. 644) ; *Foster v. Hip Lung Ying Kee & Co.,* 243 Ill. 163 (90 N. E. 375) ; *Gunderson v. Illinois Tr. & Sav. Bank,* 199 Ill. 422 (65 N. E. 326) ; *Boatmen's Bank v. Gillespie,* 209 Mo. 217 (108 S. W. 74).

But whether this be so or not, it is enough for us to hold that the action on the part of the organizers of the Associated Packing Company preliminary to and including the filing of the articles of incorporation, together with the subsequent action of the secretary of state in issuing and delivering the certificate of incorporation, created such "legal status" as to amount to a "corporation," within the contemplation of said Section 8402; and this is so regardless of the secret intentions of the incorporators. There was such "corporation" so far as anyone was concerned except the state. It alone could say otherwise. And had the sovereign so elected, said institution could have continued to exist and operate under its charter.

Wherefore, we are constrained to hold that the district court in equity had jurisdiction under said section to, and did, totally dissolve said Associated Packing Company, cancel its charter, forfeit its franchise, and appoint a receiver to wind up its business.

Because we are circumscribed by the narrowness of certiorari, it is not within our power to, and we do not, determine whether or not the incorporation or lack of incorporation of the Associated Packing Company is such as will entitle or defeat

recovery on the contracts and notes given for the purchase of stock, nor do we indicate what such decision should be.

II. With the exception of the action of the district court in refusing plaintiffs a change of place of trial to the counties of their respective residences and a transfer from equity to law, we cannot consider other and additional points and propositions urged, because (1) of the statute of limitations relating to certiorari (Code of 1924, Section 12467), and (2) the scope of the particular review sought is limited (Code of 1924, Section 12456). See, also, *Dickson Fruit Co. v. District Court*, 203 Iowa 1028, and other cases therein cited. Attention is now directed to the express reservations.

III. Defendant, at this stage of the controversy, urges that plaintiffs have waived, and are barred from claiming, the right to a change of place of trial to the several counties of their respective residences within the state, for the reasons that they appeared generally in said cause, filed motions, asked to have orders set aside, and went to trial on decisive issues of law. Statutory enactment has determined this debate adversely to these contentions. Code of 1924, Section 11053. Plaintiffs have not answered, and are entitled to said change if said section is applicable. *Burke v. Dunlap*, 185 Iowa 949.

3. VENUE: non-resident: non-waiver of right.

IV. That division of the motion seeking to obtain a change of place of trial on the part of the receiver's application for an assessment was properly overruled. So far as the subject here under consideration is concerned, it is immaterial whether the obligation sought to be enforced is designated an assessment on a stock subscription or the amount due on a contract of purchase. The object, in any event, is to recover for the unpaid par value of stock. What bearing, if any, such distinction may have on other phases of the controversy not here involved, we do not decide. Exigency of the case demands findings of fact concerning the Associated Packing Company as follows: (1) Amount of the assets and liabilities, (2) aggregate of unpaid stock subscriptions, (3) a determination of the proportional amount to be enforced against each stock subscriber, and (4) possibly other preliminaries.

4. CORPORATIONS: dissolution: assessment on stockholders: non-right to change of venue.

Said redress was exclusively within the jurisdiction of the

district court in the original proceeding in equity for the disso-
lution of the corporation. *Paine v. Mueller,* 150 Iowa 340; *Wil-
liams v. McCord,* 204 Iowa 851; *Britton v. Andrews,* 8 Fed. (2d
Series) 950.

V.  Proper venue of litigation to collect said assessment
necessitates a transfer of the separate causes of action to the
counties wherein the respective plaintiffs reside. This dispute is
not foreclosed by *Lex v. Selway Steel Corp.,* 203
Iowa 792, for in said case this court expressly
reserved the point, in the following language:

5. VENUE: action
on unpaid cor-
porate stock
subscriptions.

"We are not now called upon to determine whether motions
made in the creditor's suit, to transfer the causes of action
against individual defendants to the counties of their residence,
were properly overruled * * *."

Code of 1924, Section 11049, requires:

"Personal actions, except as otherwise provided, must be
brought in a county in which some of the defendants actually
reside * * *."

Three questions must be determined: (1) Is the "action"
personal? (2) Is there more than a single defendant to the
"action," one of whom resides in Polk County? and (3) Is there
any principle of equity making the statutory provision inappli-
cable?

Prayer for judgment is against the individual personally,
under a contract to purchase stock, executed by two parties: (1)
the Associated Packing Company, and (2) said identical pur-
chaser. Recovery sought is merely for a sum of money, the
amount of which will be definitely fixed by the assessment.
Elaboration is not necessary to convince that said statute applies.
*Kell v. Lund,* 99 Iowa 153; *Britton v. Andrews,* supra.

"Some of the defendants," as used in said Section 11049,
contemplates parties in Polk County jointly liable or necessarily
joined with a co-defender residing in some other county. Previ-
ous examination of said contract makes further discussion un-
necessary, to reach the inevitable result that there is no such
"co-party." Inapplicability here of that statutory exception is
readily seen, for there are no joint or other necessary defendants
living in Polk County, and a single subscriber resides elsewhere.

Insistence is made that equity can overcome the statutory
provision upon either or all of three theories: (1) To avoid mul-

tiplicity of suits; (2) because of the trust-fund doctrine; and (3), having obtained jurisdiction, equity will grant complete relief. With this logic, applied to the case at bar, we are compelled to disagree. In Iowa, judicial opinion has partly, if not entirely, solved the problem. Direction may be found in *Richmond v. Dubuque & S. C. R. Co.*, 33 Iowa 422, where this language is used:

"It is said that equity will take jurisdiction of this case in order to avoid a multiplicity of suits between the parties. * * * We do not understand the mere fact that there exists divers causes of action, which may be the foundation of as many different suits between the parties thereto, is a ground upon which equity may be called upon to assume jurisdiction and settle all such matters in one suit."

Further substantiation is supplied by the case of *Kell v. Lund*, supra, where it is said:

"We think that the defendant has the right to make his defense in the county of his residence. Whatever may be the rule elsewhere, to require him to answer in another county is contrary to the established procedure in this state. It has been held elsewhere that the liability of a stockholder with respect to unpaid shares is an individual and independent obligation, and may be greater or less, depending on the contract between stockholder and the corporation."

Federal courts harmoniously reach a similar conclusion. *Britton v. Andrews*, supra; *Carey v. McMillan*, 289 Fed. 380; *Hale v. Allinson*, 188 U. S. 56 (47 L. Ed. 380). *Rutenbeck v. Hohn*, 143 Iowa 13, is not discordant. Said section for removal was not involved in that case. The motion was to transfer from equity to law. Moreover, a careful analysis of the facts involved in the *Rutenbeck* suit discloses that the subscription was a joint contract, provisions of the articles of incorporation were peculiarly material, and the object really was to assess, so that the motion to transfer went to that part of the equitable suit, and, as before suggested, did not ask for the transfer of the controversy under said statute so far as it related to enforcement of the mere money demand to be fixed by the "assessment." Ample reasons exist why trial should be at the individual residences, some of which are: No equitable relief is necessary; there is no community of interest; necessarily there will be different defenses,

requiring unidentical witnesses, large expense for transportation, and maintaining them away from home; and finally the historical policy of granting trials at the defendants' residences. Additional itemization will add nothing. We are convinced that said statute is not overcome in this case by the urgency of avoiding a multiplicity of suits. Whatever the rule may be elsewhere, such legislative enactment must control, unless overcome.

Nor is said written law avoided by reason of any trust fund. So far as a particular "subscriber" is concerned, a "trust fund," if any there be, arises from said individual contract of purchase. In that there is no community relationship. Supposing such separate fund were a trust (but it is not), the total result would be, not one large "trust fund," in which all parties are interested, but rather an aggregation of single and individualized accounts, wherein one producer is not responsible to and has no interest in the other. Distinction must here be kept in mind between a trust fund, sufficient to support equity jurisdiction, and the "trust-fund doctrine," utilized as a basis for recovery by a creditor of the corporation against an alleged stockholder thereof. That "trust-fund doctrine," if there be one here (a point which we do not decide), fails to prevent a change of the place of trial under said Code section.

Proposition 3 does not apply to the enforcement of the separate contracts in question. Such step is separate from and incidental to said original receivership. *Britton v. Andrews,* supra. Equity may continue jurisdiction to grant full relief even in law, but that refers to the initial action and parties, and not to those which are secondary and independent. *Poe v. Munich Re-Insurance Co.,* 126 Md. 520 (95 Atl. 164). See, also, *Smith v. Waterloo, C. F. & N. R. Co.,* 191 Iowa 668; *Harris v. Smith,* 133 Ark. 250 (202 S. W. 244); *Old Dominion Tr. Co. v. First Nat. Bank,* 252 Fed. 613; *India Rubber Co. v. Consolidated Rubber Tire Co.,* 117 Fed. 354; *Shaw v. Beaumont Co.,* 88 N. J. Eq. 333 (102 Atl. 151).

VI.   After the action to collect said assessment has been separated into single suits, and each such several causes removed to the county of the residence of the respective defendants, should the trial then proceed in equity or in law? In that final event, why should it be in equity? The demand will have been reduced to just a request for money. No equitable relief will then be

asked or required. *Rutenbeck v. Hohn*, supra, is not a prevention. Equitable jurisdiction protected in that case has been previously afforded here in the preliminaries leading up to and including the assessment, so far as possible under said Code Section 11049.

"If there were but a single stockholder against whom recovery was sought, the form of the procedure clearly should be an action at law." *Carey v. McMillan*, supra.

"After * * * the assessment is made, the receiver may then bring actions at law against the various subscribers for the stock; and such is the proper course." *Britton v. Andrews*, above.

"The right of trial by jury shall remain inviolate * * *." Section 9, Article I, Constitution of Iowa.

Misjoinder, camouflage, or subterfuge cannot deprive the plaintiffs of this right. *Cotter v. Gilman*, 191 Iowa 795.

If and after said assessment is made, plaintiffs' motion should then be sustained, (1) to separate said suits, and (2) to transfer (a) said actions to collect said assessment to said respective counties, and (b) from equity to law. And the writ in such contingency and to that extent is allowed; otherwise it is annulled.—*Allowed in part; annulled in part.*

EVANS, C. J., and FAVILLE, DE GRAFF, and ALBERT, JJ., concur.

MORLING, J., not participating.

STEVENS, J.—I concur in the result, but adhere to the dissent previously filed.